**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

USHA BHASIN,
                    *Petitioner,*

              v.

ALBERTO R. GONZALES,* Attorney
General,
                    *Respondent.*

No. 03-73481

Agency No.
A77-424-778

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 15, 2005—San Francisco, California

Filed September 1, 2005

Before: Donald P. Lay,* Betty B. Fletcher, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge B. Fletcher

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

*The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

12037

# COUNSEL

Robert B. Jobe, Esquire, San Francisco, California, for the petitioner.

Victor M. Lawrence, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

**OPINION**

B. FLETCHER, Circuit Judge:

Petitioner Usha Bhasin, a native and citizen of India, petitions for review of the Board of Immigration Appeals's ("the Board") denial of her motion to reopen her proceedings following its decision dismissing her appeal of the Immigration Judge's ("IJ") denial of applications for asylum and withholding of removal. Because we conclude that Bhasin established prima facie eligibility for withholding of removal through evidence not available at the time of the original hearing, and because the Board otherwise abused its discretion in denying the motion to reopen, we grant the petition for review and remand to the Board with instructions to either grant relief or to remand to the Immigration Judge for a hearing on the newly presented evidence. We also hold that it was error for the Board to deny the motion as a matter of discretion under the fugitive disentitlement doctrine.

FACTUAL BACKGROUND & PROCEDURAL HISTORY

A. *Facts Presented at the Hearing*

Petitioner Bhasin appeared before an IJ on May 11, 1999, and provided testimony supplementing her application for asylum, together establishing the facts set forth below. Because neither the IJ nor the Board made any adverse credibility finding, we accept the petitioner's factual contentions as true. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004); *Navas v. INS*, 217 F.3d 646, 652, n.3 (9th Cir. 2000).

Usha Bhasin, a 63-year-old native and citizen of India, entered the United States on a B-1 non-immigrant visa on February 23, 1998, and applied for asylum and withholding of removal several months later. Her claims for relief are founded on her fears that she will be attacked and possibly killed by the Islamic militant group known as the "Jammu and

Kashmir Liberation Front" ("JKLF"), because of her eldest son's role as a government "inspector" in the Border Security Force ("BSF"). Several members of her family have already disappeared, and she claims that this persecution is on account of membership in her familial social group.

Bhasin's son Yogesh Kumar joined the BSF in 1991 and was posted on the border with Pakistan in the state of Jammu and Kashmir in India. Petitioner joined him there and lived peacefully for many years. Bhasin testified that her son became "famous" for his arrests of many militants crossing the border from Pakistan, and thus became a target of the militant organizations. In particular, when he arrested a leader of the JKLF named Shabir Shah, the JKLF stepped up its search for Yogesh.

On the night of December 15, 1996, four armed men who identified themselves as members of the JKLF arrived at Bhasin's home, looking for Yogesh. When she informed them that she did not know where he was, they slapped her, forcibly kidnaped her, and took her to a small hut in the woods where they tied her to a tree and beat her severely. Bhasin testified that the men pulled out her hair and hit her with the butt of a gun, at which time she "passed out." She was held for four days, tied to a cot, during which time the men repeatedly asked her about the whereabouts of her son. She was told that because of the arrest of their leader, Shabir Shah, they were going to "eliminate each member of [Bhasin's] family." Eventually, she was released on the side of the road and some passers-by helped her to safety.

When she returned home, she discovered that her younger son, Pawan, was missing. He has yet to be found. Because of the threats made to her by the members of JKLF, Bhasin believes that her youngest son was abducted and likely killed by the JKLF. Soon after the disappearance of Pawan, Bhasin contacted the BSF, who in turn contacted Yogesh and directed him to return home. Out of safety concerns, the BSF decided

to transfer Yogesh to another part of the Pakistani border. Bhasin then relocated to Delhi, south of Jammu and Kashmir.

Bhasin testified that after several months in Delhi, BSF officials visited her at her home and informed her that Yogesh had been missing for a week. In support of her asylum application, Bhasin submitted a letter she received from a BSF Commandant confirming that Yogesh was missing. Further investigation led to the conclusion that Yogesh and some other BSF agents had been captured or killed along the Pakistani border, likely by the JKLF, though no "concrete results" of the investigation were revealed.

A few months later, on November 28, 1997, two men knocked on Bhasin's door. When she asked who it was, they responded that they would not "spare" her, that they had already abducted her two sons, and that they would kill her. As Bhasin hid, the men threw a piece of paper at or through the door, fired shots in the air, and left. The note repeated that they had taken the sons, that one by one they would eliminate Bhasin's family, and that they would spare no one. Bhasin reported the incident to the BSF Commandant, but he told her that it was impossible to provide security for BSF families.

Frightened for her life, Bhasin left India and entered the United States on a B-1 visitor visa on February 23, 1998. At the time of the original hearing before the IJ, Bhasin reported that she spoke occasionally with her younger daughter on the phone, who reported that the neighbors had been asked by presumed JKLF agents about where Bhasin was. At that time, the younger daughter lived with Bhasin's brother, while her older daughter, Indu, was married and lived in the state of Uttar Pradesh, to the south of Delhi. Yogesh's wife was living in the state of Punjab with her parents.

B.   *Proceedings Before the IJ and Board*

The IJ found that Bhasin had established a well-founded fear of persecution,[1] but denied eligibility for asylum and withholding because the persecution was not "on account of" one of the five enumerated grounds. Specifically, the IJ stated, "Here, respondent may have a well-founded fear of harm, but that harm stems from retribution threatened by the JKLF because of the actions taken by her son, Yogesh Kumar, in the arrest of JKLF leadership." The IJ specifically rejected Bhasin's claims that she had been persecuted on account of an imputed political opinion and on account of her membership in a particular social group, namely her family.

The Board affirmed. First, the Board did not specifically address whether Bhasin had established past persecution or a well-founded fear of future persecution, but obliquely stated, "Even accepting the truth of the testimony, the Immigration Judge was correct in holding that the respondent failed to prove persecution on account of" either protected ground. Specifically, the Board rejected Bhasin's claim that she had been persecuted on account of imputed political opinion because the "actions of the militants reflect a vendetta against the respondent's eldest son and not a belief that the respondent held certain political opinions." Similarly, the Board concluded that Bhasin had failed to establish persecution on account of membership in her family social group because the "respondent was victimized because the JKLF wanted to locate her son, and perhaps as a means of retribution against

---

[1]The IJ's oral decision is slightly equivocal on whether he was making a finding based on past persecution or on a well-founded fear of future persecution. The IJ found that, "Here, respondent may have a well-founded fear of harm, but . . . ." In addition, the hearing transcript clearly indicates that the IJ believed that Bhasin had a well-founded fear of persecution, in which he stated, "such persons may have a well-founded fear of harm, which I believe she does, but . . ." , and "Now I do believe that you have a legitimate fear from harm . . . ."

the son, but not on account of membership in a particular social group." The Board then made the following finding:

> Moreover, other close members of the respondent's family are living in India without difficulty. The JKLF has not persecuted the respondent's brother, two daughters, or one daughter-in-law, the wife of her missing eldest son.

It is later-discovered evidence presented in the motion to reopen that rebuts this critical finding. Finally, the Board concluded that Bhasin was not eligible for asylum and withholding because Bhasin "has not established that her alleged persecution is countrywide."

C. *Facts Presented in the Motion to Reopen and Supporting Declaration*

Bhasin timely moved to reopen her proceedings in order to present previously unavailable evidence, focusing solely on "membership in a particular social group" as a protected ground.[2] She presented evidence in the form of a sworn declaration that her two daughters and her son-in-law (who live together), had received death threats while the appeal before the Board was pending, including blank letters dotted with blood, blood-stained rags left on their doorstep, and violent verbal threats over the telephone similar to the threats made to Bhasin herself when she was in India. In one phone call, Bhasin's daughter was told that her brothers were missing, and that everyone in her family would soon disappear.

Bhasin also testified in her declaration that both her daughters and her son-in-law have now disappeared; she has not heard from them since October 24 or 25, 2002. She continued to try to telephone them for a period of six months. She has

---

[2]Bhasin has similarly restricted her petition for review to the social group protected ground.

concluded that their phone has been disconnected. When Bhasin contacted her daughters' neighbors, they also informed her that the daughters and son-in-law had not been seen since that date.

### D.  *Board's Denial of the Motion to Reopen*

On September 9, 2003, the Board denied Bhasin's motion to reopen. After reciting some of the basic facts contained within the motion and supporting affidavit, the Board provided the following analysis:

> We find that the respondent's declaration is self-serving and that it is *not highly probative in her case.*
>
> By means of the current motion, which is unsupported by any documentation except for the respondent's own declaration and a copy of our April 2003 decision, the respondent has failed to satisfy the heavy evidentiary burden relevant to reopening. *See Matter of Coelho*, *supra.*

(emphasis added). The Board then went on to deny relief on a separate ground, namely the fugitive disentitlement doctrine:

> In addition, we find that denial of the motion to reopen is appropriate as a matter of discretion. . . . the respondent failed to appear for removal from the United States when she was ordered to report on July 16, 2003, which is substantiated by a notice in the file. We note that the respondent submitted the present motion on July 15, 2003, when her scheduled removal was imminent. Her failure to report in accordance with the removal order operated as a serious adverse discretionary factor warranting the

denial of this motion. *See Matter of Barocio*, 19 I&N Dec. 255 (BIA 1985).

## ANALYSIS

Bhasin challenges both the denial of the motion to reopen on the merits and the discretionary denial on the basis of the fugitive disentitlement doctrine. We review the Board's denial of a motion to reopen for abuse of discretion, regardless of the underlying relief requested. *INS v. Doherty*, 502 U.S. 314, 323 (1992). We review the Board's determination of purely legal questions de novo. *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000). Factual findings are reviewed for substantial evidence. *Sharma v. INS*, 89 F.3d 545, 547 (9th Cir. 1996).

The Board has the discretion to deny a motion to reopen "even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). However, we will reverse a denial of a motion to reopen if the denial was "arbitrary, irrational, or contrary to law." *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002) *cert. denied*, 123 S. Ct. 2605 (2003) (quoting *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir. 1985)). In addition, the Board must show proper consideration of all factors, both favorable and unfavorable, in determining whether to grant a motion to reopen, *Virk v. INS*, 295 F.3d 1055, 1060 (9th Cir. 2002), and must articulate its reasons for denying such a motion. *Romero-Morales v. INS*, 25 F.3d 125, 129 (9th Cir. 1994).

### A.   *Denial of Motion on the Merits*

A motion to reopen must "state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(6)(B); 8 C.F.R. § 1003.2(c)(1) (2003). The evidence presented must be "material," and the applicant must show that the evidence "could not have been discovered or presented *at the former hearing*." 8 C.F.R. § 1003.2(c)(1)

(emphasis added). An applicant must demonstrate that the new evidence, when considered together with the evidence presented at the original hearing, would establish prima facie eligibility for the relief sought. *cf. Eide-Kahayon v. INS*, 86 F.3d 147, 150 (9th Cir. 2003) (stating that motions to reopen can be denied for failure to comply with these requirements).

### 1. *Prima Facie Eligibility for Asylum or Withholding*

In order for a person to be eligible for asylum, he must demonstrate a well-founded fear of persecution on account of one of five protected grounds. 8 U.S.C. §§ 1158(b)(1) and 1101(a)(42)(A). A well-founded fear must be subjectively and objectively reasonable. *Mgoian v. INS*, 184 F.3d 1029, 1035 (9th Cir. 1999); *Montecino v. INS*, 915 F.2d 518, 521 (9th Cir. 1990). The subjective prong is satisfied upon credible testimony that the applicant genuinely fears harm. *Singh v. Moschorak*, 53 F.3d 1031, 1034 (9th Cir. 1995). The objective prong may be satisfied " 'in one of two ways: either by establishing that she has suffered persecution in the past or by showing that she has a good reason to fear future persecution.' " *Sael v. Ashcroft*, 386 F.3d 922, 924-925 (9th Cir. 2004) (quoting *Mgoian*, 184 F.3d at 1035).

**[1]** A person who establishes that he or she was subjected to persecution in the past is entitled to a presumption of a well-founded fear of future persecution. *Popova v. INS*, 273 F.3d 1251, 1259 (9th Cir. 2001). Otherwise, an applicant must generally show an individualized, rather than a generalized, risk of persecution. *Hoxha v. Aschcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003). This may be demonstrated in several ways, either by establishing "a pattern or practice of persecution of persons similarly situated," or by showing membership in a "disfavored group" coupled with a showing that the individual is likely to be "targeted" for persecution as a member of that group. *Sael*, 386 F.3d at 925.

**[2]** Next, the person seeking relief must also show that the feared persecution is being carried out "on account of" one of

the five protected grounds enumerated in the statute, including "membership in a particular social group." *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). This may be established by direct or circumstantial evidence. *Sangha v. INS*, 103 F.3d 1482, 1486-87 (9th Cir. 1997).

**[3]** We have recently reaffirmed that "family membership may constitute membership in a 'particular social group.' " *Thomas v. Gonzales*, 409 F.3d 1177, 1180 (9th Cir. 2005) (en banc). Specifically, we held that white South African family members who were "targeted on account of their shared, immutable, characteristic, namely, their familial relationship" with a hated boss met 8 U.S.C. § 1101's requirement that the persecution be on account of one of the five protected grounds. *Id.* at 1189.

The standard for establishing eligibility for withholding of removal is more stringent. An applicant must demonstrate a "clear probability" of persecution if removed, meaning that it is "more likely than not" that persecution would occur. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001).

    a.   *Past Persecution or a Well-founded Fear of Future Persecution*

As explained above, the IJ already determined that Bhasin has established either past persecution (entitling her to a presumption of a well-founded fear of future persecution) *or* a well-founded fear of future persecution. The Board did not disturb this finding. We conclude that both findings are supported by substantial evidence.

    b.   *Nexus to a Protected Ground*

**[4]** In light of the evidence presented at the original hearing and the evidence submitted with the motion to reopen that would likely be proven if another hearing were granted, we conclude that Bhasin has established a prima facie case of

persecution "on account of" membership in a particular social group. Bhasin testified at the original hearing that she was attacked, kidnaped, beaten until she "passed out," and detained for four days tied to a cot because of the actions of her son. And although it is well-recognized that "[p]ersecutors do not always take the time to tell their victims all the reasons they are being beaten or kidnaped or killed," *Gafoor v. INS*, 231 F.3d 645, 650 (9th Cir. 2000), in this case they did. Bhasin's captors specifically told her that because Yogesh had arrested their leader, Shabir Shah, they were going to "eliminate each member of [Bhasin's] family." When she was released, she discovered that her younger son had disappeared. Soon afterward, Yogesh himself went missing. Bhasin was again threatened a few months later; at that time her persecutors told her that they had taken her sons, and reiterated that her whole family would be eliminated.

**[5]** Since the original hearing, Bhasin has learned that her daughters and son-in-law were threatened in a similar manner, receiving verbal threats, blood-stained blank letters, and blood-soaked rags delivered to the house. The verbal threats specifically referred to other members of the family disappearing, and reiterated that everyone in her family would soon disappear. In October 2002, Bhasin's two daughters and son-in-law disappeared, and have not been heard from since. We conclude that this is a strong prima facie case of persecution on account of membership in a familial "social group."

Both the IJ and the Board originally denied relief on the merits because each said that the JKLF was not motivated by membership in a social group, but rather by a desire to locate Yogesh, or as a means of retribution against Yogesh. In support of this conclusion, the Board stated:

> The respondent was victimized because the JKLF wanted to locate her son, or perhaps as a means of retribution against the son, but not on account of membership in a particular social group. Moreover,

other close members of the respondent's family are living in India without difficulty. The JKLF has not persecuted the respondent's brother, two daughters, or one daughter-in-law, the wife of her missing eldest son.

In her declaration in support of her motion to reopen, however, Bhasin presented evidence that completely undermined this rationale for concluding that the "on account of" requirement had not been satisfied. Indeed, her affidavit established that three more relatives have disappeared, two of them the exact relatives that the Board referenced as not being targeted for persecution, and which at the time belied her social group claim.[3] *See Cuadras v. United States*, 910 F.2d 567, 571 (9th Cir. 1990) (concluding that claims of family-based persecution were undercut by the fact that relatives still lived in home country). It is because of this direct relationship between the Board's justification for its initial denial and Bhasin's newly presented evidence, that we are somewhat perplexed by the Board's statement that the evidence presented in the affidavit is "not highly probative in her case."[4]

---

[3] The government argues that Bhasin is improperly challenging the Board's original merits determination, which has become final, through a motion to reopen. We clarify that we are not reviewing the original Board decision directly. Our task is simply to determine whether, in light of the evidence presented both at the original hearing and that which would likely be proved through new evidence to be presented at a subsequent hearing were the motion to reopen to be granted, the petitioner has established a prima facie case of eligibility for asylum. *Eide-Kahayon v. INS*, 86 F.3d 147, 150 (9th Cir. 2003). It is important to our analysis that Bhasin's newly-presented evidence directly addressed the Board's reasons for its initial denial of eligibility.

[4] The government argues that the Board's statement in its first decision that relatives remained unharassed in India was "simply dicta." We disagree. The Board relied on this point to support its conclusion that the persecution was motivated by retribution against Yogesh rather than by membership in his family. In any case, Bhasin's declaration addresses and undermines both parts of the Board's rationale. First, it is apparently no longer true that Bhasin's relatives remain unharmed. Second, because

**[6]** We address one additional point. The government argues that the Board's characterizations of Bhasin's affidavit as "self-serving" and "unsupported by any documentation" were not the reasons for the Board's denial of the motion to reopen. Rather, according to the government, the Board denied the motion because the Bhasin did not meet her "heavy burden." This argument strains credulity. The Board clearly discredited Bhasin's affidavit because it found it was "self-serving" and "unsupported," grounds that are not only contrary to this circuit's established case law,[5] but also completely inappropriate in this case, where Bhasin had already testified credibly and her testimony had been credited by the IJ. By labeling her testimony "self-serving," the Board implicitly found Bhasin's testimony to be incredible because Bhasin had a motive to be untruthful. We have long held that credibility determinations on motions to reopen are inappropriate. *See Ghadessi v. INS*, 797 F.2d 804, 806 (9th Cir. 1986) ("As motions to reopen are decided without a factual hearing, the Board is unable to make credibility determinations at this

---

Yogesh has already disappeared, apparently into the hands of the JKLF, further attacks on family members are inconsistent with any notion that the JKLF is seeking information about his whereabouts or seeking retribution for his actions.

[5]*Ladha v. INS*, 215 F.3d 889, 905 n.17 (9th Cir. 2000) (noting that exclusion of "self-serving" documents is "not sound practice"); *Arulampalam v. Ashcroft*, 353 F.3d 679, 688 (9th Cir. 2003) ("it is inappropriate to base an adverse credibility determination on an applicant's inability to obtain corroborating affidavits from relatives or acquaintances living outside of the United States—such corroboration is almost never easily available.") (quoting *Sidhu v. INS*, 220 F.3d 1085, 1091-92 (9th Cir. 2000); *see also Ghadessi v. INS*, 797 F.2d 804, 806 (9th Cir. 1986) (stating that unless alleged facts in support of a motion to reopen are "inherently unbelievable," corroborating evidence is generally not required to establish a prima facie case). We recognize that the REAL ID Act recently amended 8 U.S.C. § 1158(b)(1)(B)(ii) and 8 U.S.C. § 1231(b)(3)(C) to allow the trier of fact to require corroborating evidence. Here we address only evidence submitted in support of a motion to reopen that was never submitted to the trier of fact, namely the IJ.

stage of the proceedings.") Indeed, facts presented in affidavits supporting a motion to reopen must be accepted as true unless inherently unbelievable. *Limsico v. INS*, 951 F.2d 210, 213 (9th Cir. 1991). We now reiterate that the self-serving nature of a declaration in support of a motion to reopen is not an appropriate basis for discrediting its content.

### 2. *Evidence Not Previously Available*

The government argues that denial of the motion to reopen was also proper because the information presented in Bhasin's declaration in support of her motion could have been presented "at an earlier stage in the proceedings." Yet the Board did not rely on this rationale in denying the motion. We "cannot affirm the BIA on a ground upon which it did not rely." *Navas v. INS*, 217 F.3d 646, 658 n. 16 (9th Cir. 2000). In any case, both the statute and the regulation indicate that the evidence must not have been available to be presented "at the former hearing." 8 U.S.C. § 1229a(c)(6)(B); 8 C.F.R. § 1003.2(c)(1). The proffered testimony concerns events that happened *after* the "former hearing" before the IJ. The government's argument that the information was previously available because it became available during the pendency of the appeal to the Board does not comport with the statute and regulation.

[7] Overall, we conclude that the Board abused its discretion in refusing to reopen Bhasin's proceedings. She provided new evidence that if proved would have established prima facie eligibility for relief. Although the Board can deny such a motion as a matter of discretion even where a prima facie case has been shown, such discretion is not unbounded. Here, the Board improperly discredited her testimony, calling it "self-serving." In addition, the Board did not take into proper consideration relevant factors weighing in favor of reopening, including the nature of the harassment endured by her daughters and son-in-law and their disappearance after she left India. Likewise the Board incorrectly determined that Bha-

sin's testimony regarding her family was "not highly proba-tive in her case." This finding is unsupported by substantial evidence, especially because her new testimony addressed one of the key problems identified by the Board in its initial order denying relief. Under these circumstances, we have little trou-ble concluding that the Board's decision to deny the motion to reopen was "arbitrary, irrational, or contrary to law." *Singh*, 295 F.3d at 1039.

B.   *Discretionary Denial of the Motion under the Fugitive Disentitlement Doctrine*

Bhasin also contends that the Board abused its discretion when it denied her timely motion to reopen as a matter of dis-cretion. In issuing its discretionary denial, the Board deter-mined that denial of the motion was appropriate because she had "failed to report in accordance with the removal order" and that this "operates as a serious adverse discretionary fac-tor warranting denial of this motion." The Board cited to *Mat-ter of Barocio*, 19 I&N Dec. 255 (BIA 1985), which holds that persons who choose to "disregard the order of deportation against them by refusing to report on their appointed date of departure" may have "their motion to reopen [ ] denied as a matter of discretion." Bhasin contends that the Board repeat-edly failed to properly serve her or her attorney with notice of the removal order and other critical documents, and that she should therefore not be penalized for her failure to report.

[8] The "fugitive disentitlement doctrine" is a "severe sanc-tion that we do not lightly impose." *Antonio-Martinez v. INS*, 317 F.3d 1089, 1091 (9th Cir. 2003) (internal quotations omit-ted). Where appropriate, the doctrine serves the legitimate policies of deterring the improper conduct of flight and pre-venting the issuance of unenforceable judicial orders. *Id.* at 1091-92 (citing *Paretti v. United States*, 143 F.3d 508, 511 (9th Cir. 1998) and *United States v. Gonzalez*, 300 F.3d 1048, 1051 (9th Cir. 2002)).

**[9]** We conclude that the Board abused its discretion in denying the motion to reopen on the basis of the fugitive disentitlement doctrine. The record makes clear that on more that one occasion, critical documents were sent to wrong addresses by the agency. First, when Bhasin's original attorney in this matter filed his notice of appearance, he used an address on Blake Street in Berkeley, California. Though that attorney never filed a notice of change of address, the agency inexplicably began sending correspondence to an address on Sansome Street in San Francisco, California. When the Board issued its initial decision denying eligibility for asylum and withholding of removal, it mailed its decision to a *second* address on Sansome Street in San Francisco, California. During this period, Bhasin's original attorney consistently used his Berkeley address when corresponding with the agency. Bhasin asserts that this failure to mail the initial denial of her administrative appeal to the correct address resulted in her failure to file a timely petition for review of the Board's original decision. Similarly, the agency's notice to report for removal was sent to the second Sansome Street address, an incorrect address for Bhasin's first attorney.

Second, after Bhasin's current attorney had filed a notice of appearance in the matter, the agency mailed its opposition to the motion to reopen only to Bhasin, not to either of her counsel. Yet even this mailing was sent to an incorrect address. Bhasin's stated address throughout the proceedings was 1489 Fruitdale Avenue, Apartment 15, in San Jose, California. The opposition to the motion to reopen, which argued that Bhasin's case should be dismissed under the fugitive disentitlement doctrine, was sent to *1498* Fruitdale Avenue, the last two digits of the numerical address transposed. For this reason, Bhasin claims that she was never given the opportunity to argue against the agency's assertion that she had become a fugitive from justice.

**[10]** Under these extraordinary circumstances of failed notice procedures, we conclude that it was inappropriate for

the Board to deny Bhasin's timely motion to reopen on the basis of the fugitive disentitlement doctrine. Not only are there serious questions as to whether Bhasin ever properly received the notice to appear for removal, this case is unlike the cases in which the Board and this court have labeled someone a fugitive from justice. For example, in *Matter of Barocio*, relied upon by the Board here, the agency presented to the Board "return receipts signed by both the male respondent [Barocio] and the office of his prior attorney which verify that they received the notice to report." 19 I&N Dec. at 256. The agency also detailed its efforts to locate the respondents, including attempts to locate them at "their last known address, the male respondent's last known place of employment, the postal service, the California Department of Motor Vehicles, and the local gas and telephone companies." *Id.*; *see also Antonio-Martinez*, 317 F.3d at 1091 (applying fugitive disentitlement doctrine where immigrant had lost contact with counsel and the agency and all efforts to contact him had failed for over two years). We find no such deliberate flouting of the immigration laws in the present case.

## CONCLUSION

In sum, we conclude that the Board improperly discounted Bhasin's testimony in her affidavit presented in conjunction with her motion to reopen. If proved, the facts asserted would establish a strong prima facie case of eligibility for asylum and withholding of removal. Given the Board's improper implicit credibility findings and its failure to consider factors in Bhasin's favor, we conclude that the Board abused its discretion in denying Bhasin's motion to reopen. Likewise, in light of the agency's numerous flawed mailings of notice in this case, invocation of the fugitive disentitlement doctrine was inappropriate, and discretionary denial of the motion to reopen was therefore an abuse of discretion. We remand this matter to the Board for further proceedings.

PETITION GRANTED. REMANDED.