NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-4806

XIUMING JIANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order
of the Board of Immigration Appeals
Immigration Judge: Honorable Eugene Pugliese
(No. A077-322-643)

Argued March 09, 2010

Before: AMBRO, SMITH and MICHEL,* Circuit Judges

(Opinion filed: May 10, 2010)

Gary J. Yerman, Esq. (ARGUED)

---

*The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals for
the Federal Circuit, sitting by designation.

Yerman & Associates
401 Broadway, Suite 1210
New York, NY 10013

     <u>Counsel for Petitioner</u>

Anthony West, Esq.
Francis W. Fraser, Esq.
John J. Inkeles, Esq. (ARGUED)
Timothy B. Stanton, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

     <u>Counsel for Respondent</u>

---

OPINION

---

MICHEL, <u>Circuit Judge</u>

This appeal comes from the Board of Immigration Appeals (the "Board").

Xiuming Jiang ("Jiang") has filed a petition for review of the decision of the Board to

dismiss her appeal from the decision of the Immigration Judge ("IJ") denying her a

reopening of her application for asylum on the basis of changed country conditions and

new facts and evidence that were previously unavailable to her at the time of her initial

hearing. For the reasons set forth below, we will grant Jiang's petition for review of the

Board's decision and remand the case.

I.

Jiang is a citizen of the People's Republic of China ("China") and a native of

Lianjiang County in the Fujian Province of China. She left China and arrived in the United States on September 19, 2000. On March 15, 2001, she filed an initial application for asylum alleging a well-founded fear of persecution based upon her cohabiting boyfriend's practice of Falun Gong. However, before a hearing on the merits could be held, Jiang withdrew her application and, on June 19, 2001, the IJ ordered her removed to China. Jiang waived appeal of the IJ's decision; however, she remained in the United States. She subsequently met and married JianZhong Huang; the couple first married in a traditional Chinese ceremony on December 9, 2003 and registered their marriage on August 2, 2005. Jiang later gave birth to two daughters, born on April 19, 2004 and February 6, 2008.

On September 19, 2007, Jiang filed a motion to reopen and a request to file a successive asylum application. Jiang's motion was based upon her alleged fear of forced sterilization if she were to return to China for her alleged violations of China's family planning policies. In the affidavit accompanying her motion, Jiang averred that she learned, through telephone contacts with her friends and relatives in China, that the local government of the town to which she would be returned had substantially increased the use of forced abortions and sterilizations. Moreover, according to Jiang, people who resist the Population and Family Planning Law ("PFPL") face criminal prosecution as well. Jiang further averred that she learned of individuals in her home village who had been forcibly sterilized after giving birth to a second child. Jiang testified that she believed that, should she be removed to China with her family, her children will be

registered as Chinese citizens and that, because she will not be classified as a "Returned Overseas Chinese," she will consequently face forcible sterilization.[1]

Jiang also proffered the affidavit of a friend, XiuYing Huang ("Huang"), who is a citizen of China currently living in Jiang's hometown. In her affidavit, Huang stated that she was forcibly sterilized in 2006 after the birth of her second child. Huang also stated that a fellow villager, Yue Ying Pan, was forced to undergo an abortion after she became pregnant a second time, and that such occurrences are "very common" in her hometown. Like Jiang, Huang also averred that people who resist the PFPL face criminal prosecution. Huang also testified that she consulted the local village committee and that the committee informed her that enforcement of the PFPL is very strict and unequivocal: women who give birth to a single child are required to have an IUD inserted and women who give birth a second time are targeted for forcible sterilization.

Jiang also included an official letter she received from the Village Committee of Lantian Village (the "Village Committee letter").[2] This communication, addressed directly to Jiang,[3] confirms the information in Jiang's and Huang' affidavits, *viz.*, that women who give birth to a single child are required to have an IUD inserted and women who give birth a second time are targeted for sterilization. The letter mirrors the affidavits of Jiang

---

[1]To qualify as a "Returned Overseas Chinese", Jiang claims that she would have to be either a citizen or Permanent Resident of the United States.

[2]Jiang's home village, to which she would be repatriated by the Government of the People's Republic of China subsequent to her removal from the United States.

[3]The letter is addressed to "Villager Xiuming Jiang" and was obtained by Jiang's mother living in Lantian Village, who approached the Village Committee directly.

4

and Huang, and informs Jiang that, should she return to China, her children will be registered as Chinese citizens and that, because she will not be classified as an "Overseas Chinese," she will be required to undergo the same family planning procedure as all local residents.

On November 1, 2007, the IJ denied Jiang's petition to reopen. The IJ found that, because the motion was filed over six years after the IJ ordered her removal, Jiang would have to establish an exception to the 90-day time limit in which to file a motion to reopen; otherwise her motion would be time-barred. *See* 8 C.F.R. § 1003.2(c)(2). The IJ held that Jiang failed to establish such an exception to the time limit and denied her motion to reopen her application for asylum. In denying her motion to reopen, the IJ noted that the Board had previously held that a Chinese citizen who had been denied asylum in the United States and who had since given birth to a second child faced a "heavy burden" in supporting a motion to reopen a petition for asylum based upon changed country conditions. *In re S-Y-G-*, 24 I. & N. Dec. 247, 251 (B.I.A. August 2, 2007). The IJ held that Jiang had experienced a change in "personal circumstances" rather than a change of circumstances "arising in the country of nationality," and that the former was insufficient to create an exception to the 90-day time limit. The IJ further held that, personal circumstances notwithstanding, Jiang had failed to meet her "heavy burden" because she failed to establish that: "'(1) a relevant [i.e., material] change in country conditions occurred, (2) the applicant has violated family planning policy as established in that alien's local province, municipality, or other relevant area, and (3) the violation would be

5

punished in a way that would give rise to a well-founded fear of persecution.'" *In the matter of Jiang*, File No. A 77 322 643, at 3 (Immigration Court November 28, 2008) (quoting *S-Y-G-*, 24 I. & N. Dec. at 251). The IJ based his holding on a review of Jiang's affidavit, the affidavit of Huang, the State Department's 2005 and 2006 Country Conditions Report, and various documents from the Chinese government and the media, including the letter from the Lantian Village Committee.

Jiang appealed and, on November 28, 2008, the Board affirmed the IJ's denial of the motion to reopen. The Board found that Jiang's affidavit was not persuasive because she "ha[d] no personal knowledge of the information she obtained from a friend concerning recent activities by family-planning officials in her native village in Fujian Province and their awareness of her United States citizen children." The Board also found that "her friend's affidavit also does not warrant reopening because it does not indicate whether she or the villagers who were allegedly forcibly sterilized were parents of children born outside of China." Consequently, the Board held that Jiang's motion to reopen her petition for asylum was time-barred under 8 C.F.R. § 1003.2(c)(2) and that she had failed to demonstrate prima facie eligibility for the relief sought, as required to warrant an exception based on changed country conditions. This appeal timely followed.

II.

The scope of our review of the Board's order denying Jiang's motion to reopen her petition for asylum is quite limited. *See INS v. Doherty*, 502 U.S. 314, 323 (1992). We review the Board's denial of a motion to reopen for an abuse of discretion. *See Liu v.*

6

*Attorney General*, 555 F.3d 145, 148 (3d Cir. 2009). Similarly, we uphold the Board's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal citations and quotations omitted). We reject the Board's findings only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Liu*, 555 F.3d at 148; 8 U.S.C. § 1252(b)(4)(B).

Under Third Circuit law, there are both procedural and substantive hurdles that must be overcome in a motion to reopen removal proceedings. *Shardar v. Attorney General of U.S.*, 503 F.3d 308, 313 (3d Cir. 2007). Under the governing regulations, "an alien may file only one motion to reopen removal proceedings ... and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). However, the "time and numerical limitations ... shall not apply" to motions to reopen that "apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality ... if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *Id.* Therefore, if the asylum applicant presents material evidence of changed country conditions that could not have been presented during the hearing before the IJ, his motion can be considered, even if there has been a prior motion to reopen or the motion is beyond the 90-day time limit for filing. *See Filja v. Gonzales*, 447 F.3d 241, 251-54 (3d Cir. 2006).

7

With regard to the substantive hurdle, "[a]s a general rule, motions to reopen are granted only under compelling circumstances." *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004). The Board has held that, in exercising its discretion to reopen proceedings, "we have been willing to reopen where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening." *In re L-O-G-*, 21 I. & N. Dec. 413, 419 (B.I.A. June 14, 1996) (internal quotation marks and citation omitted). As noted, "[a] motion to reopen must establish prima facie eligibility for [the relief sought]." *Guo*, 386 F.3d at 563. In order to make a prima facie case, the applicant must "'produce objective evidence showing a "reasonable likelihood" that he can establish [that he is entitled to relief].'" *Id.* (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir. 2002)) (alteration in original). For an asylum claim, this "means merely showing a realistic chance that the petitioner can at a later time establish that asylum should be granted." *Id.* at 564 (internal quotation marks and citation omitted). Facts presented in the motion to reopen are "accepted as true unless inherently unbelievable." *Shardar*, 503 F.3d at 313 (quoting *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005)). That said, the regulations provide that "[t]he Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). But although the Board has discretion to deny a motion to reopen notwithstanding a prima facie showing, when it denies a motion to reopen on that ground, we review that denial to ensure that it is supported by substantial evidence and is not an abuse of discretion. *Sevoian*, 290 F.3d at 174.

Jiang argues that the Board, in concluding that she had not met her burden of proof, erred in attaching minimal weight to her affidavit, the affidavit of Huang, and the official notice from the Village Committee of Lantian Village. Specifically, the Board found Jiang's affidavit "unpersuasive because she has no personal knowledge of the information she has obtained from a friend concerning recent family-planning officials in her native village in Fujian Province and their awareness of her United States citizen children." *In re Xiuming Jiang*, File No. A077 322 643, at 2 (B.I.A. November 28, 2008) In addition, the Board also found that "her friend's affidavit also does not warrant reopening because it does not indicate whether she or the villagers who were allegedly forcibly sterilized were parents of children born outside of China, like the respondent." *Id.* Jiang argues that the Board erred in failing to attach sufficient weight to these documents, which she contends are highly probative of her claim that either she or her Chinese-citizen husband will be forcibly sterilized upon their return to China. The government argues that Jiang's fear of forcible sterilization upon her return is "purely speculative" and that she cannot make a prima facie case that she is eligible for asylum. The government maintains that the Board correctly relied upon its prior evaluation of evidence of alleged Chinese coercive measures from its previous holdings in *In re S-Y-G-*, 24 I. & N. Dec. 247 (B.I.A. Aug. 2, 2007); *In re J-W-S-*, 24 I. & N. Dec. 185 (B.I.A. June 7, 2007), and *In re C-C-*, 23 I. & N. Dec. 899 (B.I.A. March 23, 2006). Based upon the analyses contained in these prior cases, the government contends, the Board concluded

that Jiang had not established an objectively reasonable fear of forced sterilization based upon the birth of two U.S. citizen children. Specifically, the Board found in those cases that, although there was some evidence of incidences of forced sterilization, there was no evidence of a uniform policy of forcible sterilization within the petitioner's home region.

Consequently, the government argues, given the evidence presented, it was reasonable for the Board to determine that Jiang failed to establish that she will be singled out for prosecution. The government dismisses Jiang's evidence as "anecdotal," and argues that there is no credible evidence that forced sterilizations are mandated in Fujian Province after the birth of a second child. Finally, the government argues that Jiang adduces no evidence to support her claim that individuals in her position, *viz.*, Chinese citizens lacking an "Overseas Chinese" classification and returning to China with two foreign-born children, are likely to be targeted for forcible sterilization.

The government's argument might be more persuasive were it not for the official, personalized communication sent to Jiang from the Village Committee of her home town. That letter states in no uncertain terms that, as a returning Chinese citizen lacking an "Overseas Chinese" classification and with two foreign-born children (who would necessarily be registered as Chinese citizens), Jiang would be a target for forced sterilization. This communication corresponds precisely with the affidavits of Jiang and Huang. Because the Third Circuit requires that "[f]acts presented in the motion to reopen are accepted as true unless inherently unbelievable," the Board is required to accept the

10

local Chinese government's assertion as true. *Shardar*, 503 F.3d at 313 (internal quotation marks and citations omitted).

The translated letter, worth reproducing in its entirety, states:

Villager Xiuming Jiang:

In regard to your inquiry about the specific regulations of China's Population and Family Planning Law in our village, we now reply as follows:

Family planning is one of the most fundamental, crucial national policies of the People's Republic of China. Our village strictly implements the Regulations of Population and Family Planning of Fujian Province; any citizen of China who gives birth to one child will be the target for IUD insertion; citizens with two children will be targets for sterilization.

Since you have no legal status in the United States, you are still a citizen of China, not classified as an "oversea [sic] Chinese." Pursuant to Article 5 of the Nationality Law of the People's Republic of China, once you come back to China, your US-born children will be registered as Chinese citizen [sic] and you will be required to undergo the same family planning procedure as all local residents.

Hereby notify.
Village Committee of Lantian Village

The Board's conclusion that the Village Committee letter was of "little evidentiary weight" because it "does not demonstrate a reasonable likelihood that [Jiang] would be forcibly sterilized or face any other sanctions amounting to persecution or torture if she did not voluntarily submit to that procedure" is scarcely credible. *Jiang*, File No. A077 322 643, at 2. The letter, addressed specifically to Jiang, states (1) that mothers having given birth to two children will be targets for sterilization, (2) that, upon her return, Jiang's two children would be registered as Chinese citizens for the purposes of the

11

PFPL, and (3) that Jiang would be required to undergo the "same family planning procedure." One need not be particularly acute to complete the syllogism and reason that Jiang would therefore be a "target[] for sterilization."

Moreover, although the Board discounted the Village Committee letter because it was a photocopy, it did not indicate that it questioned the authenticity of the letter, nor did it suggest that it had any grounds to do so. Consequently, the Board's affording of little evidentiary weight to the Village Committee letter, and the affidavits of Jiang and Huang which reflect the contents of that letter, amounts to an abuse of discretion.

The government argues that the 2006 U.S. State Department's relevant country condition report did not include Fujian Province among those requiring termination of pregnancy if the pregnancy violates provincial family planning regulations, and points out that violators of the PFPL could face only economic threats including "social compensation fees." However, the Village Committee letter plainly states that family planning laws will be strictly enforced, including required sterilization. If true, and the Board is required to accept this evidence as true, then there was prima facie evidence that there has been a change in country conditions in the locality to which Jiang will be repatriated.

Finally, Jiang submitted a wealth of documentary evidence that the Board failed to address or summarily dismissed as "cumulative and duplicative of … our recently published decisions," describing similar enforcement of the People's Republic of China's PFPL. For example, a 2003 Administrative Decision of the Department of Family-

12

Planning administration of Fujian Province states that Chinese citizens living in the United States without permanent resident status there who give birth to children born in the U.S. are subject to the same family-planning laws as Chinese citizens living in China, and are subject to those laws upon their return to Fujian Province. Although this and other similar documents do not, by themselves, necessarily describe the situation in Jiang's own village, they provide a context in which to place the highly personalized and specific statements of the Village Committee letter.

## IV.

Jiang has made a prima facie case of changed country conditions insofar as she has produced cumulative, consistent, and personalized objective evidence demonstrating a reasonable likelihood that she is entitled to relief. By ignoring or dismissing the evidence of changed country conditions and Jiang's well-founded fear of forcible sterilization should she return to China, the Board abused its discretion in denying her petition to reopen. Consequently we will grant Jiang's petition for review of the Board's denial of her motion to reopen and will remand the case to the Board for further proceedings consistent with this opinion.