**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



FILED

JUL 27 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSE JUAN BAUTISTA, AKA Juan
Patino,

　　　　　　　　Petitioner,

v.

WILLIAM P. BARR, Attorney General,

　　　　　　　　Respondent.

No.　18-72101

Agency No. A074-629-552

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 15, 2020
Portland, Oregon

Before:　BYBEE and VANDYKE, Circuit Judges, and CHHABRIA,** District
Judge.

Partial Concurrence and Partial Dissent by Judge VANDYKE

　　　Petitioner Jose Juan Bautista, a native and citizen of Mexico, petitions for

review of the Board of Immigration Appeals' (BIA) decision denying his motion to

---

　　*　　This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

　　**　　The Honorable Vince Chhabria, United States District Judge for the
Northern District of California, sitting by designation.

reopen proceedings. Because the parties are familiar with the facts, we will not recite them here except as necessary. We have jurisdiction under 8 U.S.C. § 1252. We grant in part and deny in part the petition for review.

"We review for abuse of discretion the BIA's denial of a motion to reopen." *He v. Gonzales*, 501 F.3d 1128, 1130 (9th Cir. 2007). The BIA abuses its discretion when it "makes an error of law" or when it draws a conclusion that is "illogical . . . implausible . . . or . . . without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc) (internal quotation marks omitted).

An alien who has received a final order of removal but has obtained new evidence supporting his claim for relief may ask the BIA to reopen proceedings and reconsider his case. 8 U.S.C. §1229a(c)(7). The alien has ninety days from the date on which the final removal order is entered to file the motion. *Id*. § 1229a(c)(7)(C)(i). However, if the motion to reopen includes a claim for asylum based on changed country conditions, then this deadline does not apply, so long as the "evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii). "[A] motion to reopen will not be granted unless the [alien] establishes a prima facie case of eligibility for the underlying relief sought." *Ordonez v. INS*, 345 F.3d

2

777, 785 (9th Cir. 2003) (quoting *In re S-V-*, 22 I. & N. Dec. 1306 (B.I.A. 2000)). An alien has established a prima facie case for relief when "the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Id*. And, "facts presented in affidavits supporting a motion to reopen must be accepted as true unless inherently unbelievable." *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005).

Here, the BIA denied Bautista's motion to reopen as untimely, concluding that the exception to the ninety-day filing deadline for changed country conditions did not apply. This decision was an abuse of discretion, because the BIA did not apply the correct legal standard in assessing the evidence Bautista submitted in support of his motion. Included with Bautista's motion to reopen was the declaration of Dr. Nielan Barnes, which reported that "the situation of LGBT and HIV+ individuals [in Mexico] has . . . become more perilous," due in part to an increase in violence against LGBTQ persons following the passage of progressive

social policies in 2010 and 2015.[1]  Evidence of this increased violence "was not available . . . at the previous proceeding" because the social policies that purportedly spawned the violence were not passed until after Bautista was ordered removed.  8 U.S.C. § 1229a(c)(7)(C)(ii).

An alien qualifies for asylum if he "is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).  Dr. Barnes's declaration describes widespread violence and discrimination against LGBTQ persons in Mexico, purportedly occurring "in every part of the country."  And, according to Dr. Barnes's declaration, because this violence is allegedly committed by and with the acquiescence of government officials, victims of this persecution "cannot rely on public authorities to bring the perpetrators of violence to justice."  The BIA was required to accept this evidence

---

[1] Though Bautista is not a member of the LGBTQ community, Dr. Barnes asserts that in Mexican society, "those known to have HIV/AIDS are presumed to be gay" and thus are "persecuted and subjected to many of the same forms of stigma, discrimination and violence" as LGBTQ persons.  Because "[p]ersecution 'on account of' membership in a social group . . . includes what the persecutor perceives to be the applicant's membership in a social group," Bautista may use evidence of persecution against LGBTQ persons in Mexico to support his asylum claim. *Thomas v. Gonzales*, 409 F.3d 1177, 1188 (9th Cir. 2005) (en banc), *vacated on other grounds by* 547 U.S. 183 (2006).

as true unless it found Dr. Barnes's declaration "inherently unbelievable." *Bhasin*, 423 F.3d at 987. The BIA did not conduct that inquiry, instead simply denying the motion to reopen because it disagreed with Dr. Barnes's analysis. By applying the wrong legal standard, the BIA abused its discretion.

We express no opinion on whether the Barnes declaration could be found inherently unbelievable, or on the merits of Bautista's asylum claim.[2] We hold only that because the BIA disregarded Bautista's evidence of changed country conditions without conducting the appropriate analysis of that evidence, it abused its discretion.

**PETITION GRANTED IN PART, DENIED IN PART.**

---

[2] Bautista also claims that the immigration court lacked jurisdiction over these proceedings, but his argument is foreclosed by our decisions in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), and *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020). Bautista has also brought several challenges to the BIA's process of deciding stay motions filed in conjunction with motions to reopen proceedings, but we find that each of these challenges lacks merit. Accordingly, we deny the petition for review for these claims.



*Jose Bautista v. William Barr*, No. 18-72101

VANDYKE, Circuit Judge, dissenting in part and concurring in part.

I write to dissent from the majority's decision to grant, in part, Bautista's petition for review. I believe the majority, in reaching that conclusion, incorrectly characterizes Dr. Barnes's declaration and the BIA's consideration of it. Having accurately (albeit tersely) summarized Dr. Barnes's declaration, the BIA appropriately concluded that Bautista did not demonstrate changed country conditions because the "evidence [he provided] indicates *ongoing* discrimination against … HIV positive individuals in Mexico, not that conditions in Mexico have worsened in this respect since [Bautista's] hearing in 2009," and thus Bautista could have presented evidence of such discrimination at his initial removal proceedings. This correct summary of the evidence that Bautista provided to the BIA was not an abuse of discretion. We should deny Bautista's petition for review in whole.

1.      In assessing the presence of changed country conditions for purposes of a motion to reopen, "[t]he critical question is … whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution." *Malty v. Ashcroft*, 381 F.3d 942, 945 (9th Cir. 2004). Here, that means Bautista was required to provide evidence comparing the conditions in Mexico in 2009 at the time of Bautista's initial

1

hearing before the IJ with those in 2018 at the time he filed a motion to reopen. *See Salim v. Lynch*, 831 F.3d 1133, 1137 (9th Cir. 2016).

2. As the basis for its grant of Bautista's petition, the majority references Dr. Barnes's declaration's statement that "'the situation of LGBT and HIV+ individuals [in Mexico] has … become more perilous' …." The majority characterizes Dr. Barnes's declaration as evincing that there has been "an increase in violence against LGBTQ persons following the passage of progressive social policies in 2010 and 2015." But that is not actually what Dr. Barnes's declaration shows. It references "a number of progressive legal policy advances toward LGBT rights" in Mexico, including some since 2009: "same sex marriage and adoption laws passed in Mexico City in 2010 and the Mexico City Supreme Court rul[ing that] laws preventing gay marriage were unconstitutional in 2015."[1] It also refers to what it calls the "well documented … 'Backlash theory,'" which it says supports a conclusion that "the situation of LBGT [sic] and HIV+ individuals has paradoxically become more perilous, as the public and authorities react to (backlash) expressions of a form of sexuality that the culture does not embrace and, in fact, fears."

But Dr. Barnes's declaration never expressly ties its Mexico "backlash theory" to the time frame *since* Bautista's initial hearing in 2009. Instead, her

---

[1] It also references advances *before* 2009, including the Mexican government's passage of "a policy of universal free access to antiretroviral medication" in 2003.

declaration merely opines that conditions have worsened since some *unidentified* time in the past. So the BIA's statement is correct that Dr. Barnes's declaration only "indicates ongoing discrimination against … HIV positive individuals in Mexico, not that conditions in Mexico have worsened in this respect since [Bautista's] hearing in 2009."

In explaining her Mexico "backlash theory," Dr. Barnes imprecisely opines that the situation for the LGBTQ and HIV-positive community "has paradoxically become increasingly more perilous" and violence against such community "has increased over time," without detailing *when* these increases began or what time periods are being compared. One cause of such backlash, according to Dr. Barnes, is "advances in legislation and increasing visibility of gay rights and AIDS activism." Notably, Dr. Barnes does not specifically identify the 2010 or 2015 policy advances referenced by the majority as the starting point for her Mexico "backlash theory." As explained below, there is a good reason for this—Dr. Barnes has previously opined that the "backlash" has been occurring in Mexico since well before 2009. It is therefore reasonable to view any post-2009 policy advances as merely the latest stimulus for an *ongoing* backlash. This reading of Dr. Barnes's declaration is particularly justified by the fact that she also cites to a source from 2006—well before Bautista's initial hearing in 2009—to describe persecution and violence against LGBTQ and HIV-positive individuals. And throughout her

3

declaration, she acknowledges that the conditions she is describing are "ongoing," "constant," "continu[ing]," "pervasive," "still prevalent," "persistent and consistent."

The BIA was not required to ignore the facts in Dr. Barnes's declaration evincing that the Mexico "backlash theory" has been ongoing since before 2009. *Cf. Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005). Taken at face value, Dr. Barnes's declaration shows that conditions for those perceived to be LGBTQ in Mexico were worse in 2018 than they were at some indiscriminate time in the past, but not that conditions were necessarily worse in 2018 than they were in 2009. Conditions in Mexico have, therefore, not changed for the worse since Bautista's initial hearing before the IJ—at least not based on Dr. Barnes's declaration.

Instead of disregarding evidence of changed country conditions in Dr. Barnes's declaration—as the majority accuses the BIA of doing—the BIA specifically referenced Dr. Barnes's declaration, but concluded that the evidence as a whole showed *ongoing* discrimination against HIV-positive individuals, not a change in those conditions since 2009. This conclusion is just a succinct way of saying what I have explained in more detail above, and does not come close to rising to the level of abuse of discretion.

3. This Court's previous exposure to Dr. Barnes's Mexico "backlash theory" only reinforces my conclusion above that the BIA's reading of Dr. Barnes's

4

declaration was not an abuse of discretion. Dr. Barnes has been championing the *exact same* Mexico "backlash theory" for years, including before this Court and for the period well before Bautista's 2009 hearing. For example, in her declaration submitted in the matter of *Avendano-Hernandez v. Lynch*, Dr. Barnes asserted that "as a result of [the "gay pride"] movement, the[] situation [of LGBTQ individuals in Mexico] has paradoxically become increasingly more perilous, as the public and authorities react to their expressions of a form of sexuality that the culture does not embrace and, in fact, fears." Certified Admin. Record at 419, 800 F.3d 1072 (9th Cir. 2015) (No. 13-73744). This assertion is basically identical to Dr. Barnes's statement in the case before us, except, in support of her assertion in *Avendano-Hernandez*, Dr. Barnes described a newspaper article reporting "a 100% increase in the average number of annual killings [in Mexico] motivated by homophobia during the period between 2001 and 2009, as compared with from [sic] 1995 through 2000." *Id.* This data—relied on by Dr. Barnes to reach the same conclusion she reaches in this case—clearly came from the *same time frame* as (if not well before) Bautista's initial hearing. While Dr. Barnes notably left out the discussion of this newspaper article from her declaration submitted in this case, she curiously did not provide any new or updated details or statistics in its place to indicate that conditions have gotten *even worse* since 2009.

This Court en banc also identified the same "backlash" conditions occurring in Mexico around the time of Bautista's initial hearing. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1057 (9th Cir. 2017) (en banc) (noting appellant "submitted 2009 and 2010 U.S. Department of State Country Reports for Mexico … [which] showed that the violence [against gays and lesbians] rose even as—and perhaps because—Mexican laws were becoming increasingly tolerant of gay rights").[2] The Court highlighted that "[t]he 2009 and 2010 [country] reports show … that persecution of gay men *remained* a serious problem in Mexico five and six years after [appellant] fled in 2004." *Id.* at 1075 (emphasis added). As the basis for this proposition, the Court quoted from Mexico's 2009 country report, noting "[w]hile homosexual conduct experienced growing social acceptance, the National Center to Prevent and Control HIV/AIDS stated that discrimination *persisted*." *Id.* (emphasis added). Significantly, the 2006 and 2007 country reports for Mexico include nearly identical observations.[3] These statements from *Bringas-Rodriguez* further support

---

[2] *See also id.* at 1072 (acknowledging "an increase in violence against gay, lesbian, and transgender individuals during the years in which greater legal protections have been extended to these communities") (emphasis omitted) (quoting *Avendano-Hernandez*, 800 F.3d at 1081); *id.* at 1075 (discussing evidence from newspaper articles that "revealed an increase from an average of nearly 30 killings a year [in Mexico] motivated by homophobia between 1995 and 2000 to nearly 60 a year between 2001 and 2009") (quotation marks omitted). These final statistics are yet more evidence that the claimed "backlash" was occurring in Mexico before 2009.

[3] U.S. Dep't of State, 2007 Country Reports on Human Rights Practices: Mexico (2008), https://2009-2017.state.gov/j/drl/rls/hrrpt/2007/100646.htm ("While homosexuals experienced a growing social acceptance, the National Center to Prevent and Control HIV/AIDS stated that discrimination persisted."); U.S. Dep't of State, 2006 Country Reports on Human Rights Practices:

that the conditions described in Dr. Barnes's "backlash theory" have been prevalent in Mexico since *before* Bautista's initial hearing.

Given all of this, the BIA did not abuse its discretion in its short but fair assessment of Dr. Barnes's declaration and its resulting decision to deny Bautista's motion to reopen.[4]  Accordingly, I respectfully dissent from the majority's decision to grant, in part, Bautista's petition for review.[5]

---

Mexico (2007), https://2009-2017.state.gov/j/drl/rls/hrrpt/2006/78898.htm (same, but with an added acronym for the Center).

[4] I empathize with Bautista and the hardship his removal will cause to his wife and six children. If I were the BIA, I would have exercised its discretion to reopen Bautista's proceedings sua sponte to address the very different family situation he now has and the serious hardship his removal would likely cause them.  But I'm not the BIA, and I don't see how the BIA committed any *legal* error in how it exercised its discretion.  *See Bonilla v. Lynch*, 840 F.3d 575, 579 (9th Cir. 2016).

[5] I concur with footnote two of the majority's disposition and its resulting decision to deny that portion of Bautista's petition for review.