PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2765
_____

YAGENDRA TILIJA,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                    Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(A208-925-410)
Immigration Judge: Daniel A. Morris
_____

Argued November 27, 2018
_____

Before: GREENAWAY, JR., SHWARTZ, and BIBAS,
*Circuit Judges*.

(Opinion Filed: July 12, 2019)

Stephen A. Fogdall
Rachel A.H. Horton        **[ARGUED]**
Schnader Harrison Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103

   *Counsel for Petitioner*

Sharon M. Clay
Andrew J. Oliveira        **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

   *Counsel for Respondent*

_____

OPINION

GREENAWAY, JR., *Circuit Judge*.

Petitioner Yagendra Tilija appeals a final order of removal issued by the Board of Immigration Appeals ("BIA" or "Board"), which denied his motion to remand and dismissed his appeal from the decision of the Immigration Judge ("IJ"). For the following reasons, we will grant Tilija's petition for review, conclude as a matter of law that the new evidence Tilija

submitted established a prima facie asylum claim, and remand for further proceedings.

## I.      Factual and Procedural Background

Tilija is a Nepali native and citizen who was charged removable under 8 U.S.C. § 1182(a)(7)(i)(I) and applied for asylum and withholding of removal under the Immigration and Nationality Act ("the Act") and protection under the Convention Against Torture ("CAT").[1] Tilija joined the Nepali Congress Party ("NCP") in 2013, which is the political rival of the Maoist Party. Tilija campaigned on behalf of the NCP by attending meetings, putting up posters, participating in rallies, distributing pamphlets, and canvassing door-to-door. Maoists told Tilija to join their party and warned him not to participate in the election. On an occasion where Tilija was campaigning for the NCP, a group of Maoists attacked him, throwing stones at Tilija and injuring his face above his right eye and along the side of his face, resulting in six stitches. Maoists came to Tilija's home and told his father that if they saw Tilija, they would kill him. When Tilija was discharged from the hospital, he stayed at a hotel instead of going to his home in the village due to this threat.

Tilija, feeling unsafe, moved to Pokhara, a town four hours away from his home. When he reached Pokhara, Maoists called him and told him that the y would kill him the

---

[1] Although Tilija seeks, in addition to asylum, withholding of removal and CAT relief in his motion to remand, we conclude that he establishes a prima facie case for asylum. Therefore, we need not address these alternate forms of relief. *See Shardar v. Att'y Gen.*, 503 F.3d 308, 312 n.4 (3d Cir. 2007).

3

next time they found him. A month later, Maoists called Tilija again, telling him to leave the NCP and warning him that if he did not, they would kill him. Maoists called a third time, telling Tilija that if he came back to his village, they would kill him. One day, an individual who Tilija knew to be a Maoist activist visited the store where Tilija was working, and though the individual did not say anything, Tilija became afraid and decided to quit his job and leave Pokhara.

Tilija then moved to Kathmandu. Approximately a month later, a Maoist called him and again threatened to kill him, at which point Tilija stopped using his cell phone. Tilija remained in Kathmandu for a year, until an earthquake destroyed the house he was renting, after which Tilija lived in a tent for a month, afraid to return home to his village. There were strikes and protests against the government throughout the country, and Tilija did not feel safe from the Maoists amidst the chaos, so he decided to leave Nepal. Tilija observed that many members of the police were affiliated with Maoists, and according to Tilija, the police did not investigate crimes committed by Maoists. Therefore, Tilija did not report the Maoists' attack on him or any of their threats to the police because he believed that the police would not be able to protect him. He had observed previously that the police did not investigate when Maoists murdered his cousin's father-in-law. He was also afraid that if he went to the police, the Maoists would find out and retaliate.

The IJ denied Tilija's application for asylum and withholding of removal under the Act and the CAT. The IJ found Tilija to be credible regarding his claim and found that Tilija adequately corroborated his claim with evidence. The IJ also found that Tilija was targeted for his political opinion. However, the IJ determined that the harm Tilija suffered did

4

not rise to the level of persecution under the Act and that Tilija did not establish that the government was unable or unwilling to protect him.

On appeal to the BIA, Tilija presented new evidence that was not available previously. According to Tilija, after his merits hearing on January 6, 2017, his wife was assaulted and raped on January 21, 2017, because of his political activities, opinion, and affiliation with the NCP. Tilija's wife provided a letter for submission to the BIA, noting she "went to [a] nearby police office and reported the incident." JA 357. She also submitted medical records of an abortion and treatment in a clinic following the assault and rape. Mrs. Tilija also provided letters from individuals in Nepal, including one from a friend who corroborated that Tilija and his wife have both been victims of Maoists, and that following her rape and assault, Mrs. Tilija "reported to the police on the same day but she did not get any help from [the] police." JA 346. Despite this new evidence, the BIA denied Tilija's motion for remand and held that he did not present sufficient evidence to overcome the IJ's determination that Tilija failed to show that the government was unable or unwilling to protect him. This timely petition for review followed.

## II.    Jurisdiction and Standard of Review

The IJ had jurisdiction over Tilija's immigration proceedings pursuant to 8 U.S.C. § 1229a. The BIA had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b) and 1240.15, and it exercised jurisdiction over the motion to remand under 8 C.F.R. § 1003.2(c). We have appellate jurisdiction over final orders of removal pursuant to 8 U.S.C. § 1252(a).

5

We review the BIA's denial of a motion to remand for abuse of discretion and review underlying findings of fact for substantial evidence.[2] *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006). An abuse of discretion is found where the BIA's denial of a motion to remand is "arbitrary, irrational, or contrary to law." *Id.* (internal quotations marks omitted) (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002)). "We review the BIA's legal conclusions *de novo*, but we accord deference under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1884), to its interpretation of statutes and regulations within its enforcement jurisdiction." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010) (citations omitted).

---

[2] A motion to remand seeking the introduction of new evidence is adjudicated under the same standard for adjudicating a motion to reopen. *See Huang v. Att'y Gen.*, 620 F.3d 372, 389 (3d Cir. 2010); 8 C.F.R. § 1003.2(c)(4); *In re Coelho*, 20 I. & N. Dec. 464, 471 (B.I.A. 1992) ("[W]here a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions."). For this reason, "motion to reopen" is also used in this opinion to address the legal standard utilized.

### III.    Analysis

Tilija raises two main issues on appeal.[3]    First, he contends that the BIA erred in failing to accept his new evidence as true when evaluating his prima facie claim for asylum relief.    Second, he argues that the BIA incorrectly analyzed his prima facie claim by applying the incorrect standard to his new evidence. Tilija raises valid points on both issues, and indeed provides sufficient evidence to support a prima facie claim.    We will therefore grant his petition for review and remand for further proceedings, consistent with this opinion.

*A.    Standard for Establishing a Prima Facie Claim for Asylum Relief*

The BIA may deny a motion to remand asylum proceedings if it determines that (1) the movant has not established a prima facie claim for the relief sought, (2) the movant has not introduced previously unavailable, material evidence, or (3) in the case of discretionary relief, such as asylum, the movant would not be entitled to relief even if the

---

[3] Petitioner also alludes to the fact that the BIA issued a summary opinion. Appellant's Br. at 19 ("[T]he BIA's opinion does not articulate which, if any, of these options is utilized . . . ."). The BIA must perform an analysis of sufficient depth to permit meaningful appellate review of its reasoning and lack of such analysis has served as a ground to remand. *Toussant v. Att'y Gen.*, 455 F.3d 409, 414 (3d Cir. 2006).  Because we resolve this case on other grounds, we need not reach the merits of this argument.

motion was granted. 8 C.F.R. § 1003.2(c)(1); *Huang*, 620 F.3d at 389.

Here, only the first prong is at issue: whether Tilija's new, material evidence establishes a prima facie claim for asylum. To establish a prima facie claim, the movant "must produce objective evidence that, when considered together with the evidence of record, shows a reasonable likelihood that he is entitled to [asylum] relief." *Huang*, 620 F.3d at 389 (citation omitted). The BIA "must actually consider the evidence and argument that a party presents" and may not summarily dismiss the motion. *Zheng v. Att'y Gen.*, 549 F.3d 260, 266 (3d Cir. 2008) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)).

To establish a "reasonable likelihood" that he is entitled to asylum relief, the movant must "merely show[] a realistic chance that the petitioner can at a later time establish that asylum should be granted." *Guo v. Ashcroft*, 386 F.3d 556, 564 (3d Cir. 2004). The movant is entitled to asylum if he demonstrates a well-founded fear of persecution. *See id.* To establish a well-founded fear of persecution, the petitioner must demonstrate, first, that he "has a fear of persecution . . . on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(2)(i)(A); *Huang*, 620 F.3d at 380–81. Second, the petitioner must show that there is a "reasonable possibility" that he will suffer persecution based on a protected ground if returned to his or her native country. 8 C.F.R. § 1208.13(b)(2)(i)(B). Third, the petitioner must show that he "is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear." *Id.* at 8 C.F.R. § 1208.13(b)(2)(i)(C). "If an applicant demonstrates past persecution on account of a protected ground there is 'a

8

rebuttable presumption of a well-founded fear of future persecution, as long as that fear is related to the past persecution.'" *Shardar v. Att'y Gen.*, 503 F.3d 308, 312 (3d Cir. 2007) (quoting *Lukwago v. Ashcroft*, 329 F.3d 157, 174 (3d Cir. 2003)).

The IJ found Tilija testified credibly, and that he was targeted on account of his political opinion. However, the IJ determined that the harm Tilija suffered did not rise to level of persecution under the Act, and that the Petitioner did not establish that the Nepali government was unable or unwilling to protect him.

### B.       *The BIA Must Accept Facts Presented as True*

The BIA must accept Tilija's facts presented on his motion to remand as true. "Facts presented in the motion to [remand] are 'accepted as true unless inherently unbelievable.'" *Shardar*, 503 F.3d at 313 (quoting *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005)). When Tilija presented letters of evidence stating his wife reported her attack to the police and the police did not help, the BIA did not accept them as true. Instead, the BIA questioned the veracity of Mrs. Tilija and her friend's statements regarding what the police "did or did not do" despite both letters stating the police did not act. Additionally, the BIA opinion asks for "more details regarding [Mrs. Tilija's] interaction with the police," still not accepting the evidence as true. JA 8.

Although the BIA does not need to discuss every piece of evidence in the record, it may not "ignore or misconstrue evidence in the asylum applicant's favor," which is what the BIA did with Tilija's new evidence. *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 107 (3d Cir. 2010). The BIA does not note

9

that anything in Tilija's new evidence is inherently unbelievable, therefore it must be taken as true. When the BIA did not accept this evidence as true, it incorrectly applied an overly rigorous standard to Tilija's new evidence.

We have held that not accepting evidence as true is an abuse of discretion if the petitioner would have established a prima facie case with the ignored evidence. *See Shardar*, 503 F.3d at 313. Therefore, the next step in the analysis is determining whether Tilija established a prima facie case for asylum assuming his new evidence as true. If Tilija has provided sufficient evidence to establish a prima facie claim, the BIA's decision to deny his motion would lack substantial evidence, and therefore would be an abuse of discretion. For the reasons set forth in the following section, we hold that Tilija does establish a prima facie case, and therefore the BIA's decision to deny Tilija's motion to remand is an abuse of discretion because the BIA lacked substantial evidence for its decision.

## C. Tilija's New Evidence Establishes a Prima Facie Claim for Asylum

Tilija's new evidence, accepted as true, in combination with his evidence in the record, establishes a prima facie asylum claim. An asylum seeker need not prove his entire asylum case to properly assert a prima facie claim. *See Guo*, 386 F.3d at 564 (noting that prima facie "would lack meaning" if it required all evidence submitted at the prima facie stage to be able to establish eligibility for asylum). "To establish a prima facie claim, the [movant] must produce objective evidence that, when considered together with the evidence of record, shows a reasonable likelihood that he is entitled to relief." *Huang*, 620 F.3d at 389 (citation omitted). This means

10

Tilija must "merely show[] a realistic chance" that he "can at a later time establish that asylum should be granted." *Guo,* 386 F.3d at 564.

With respect to asylum relief, Tilija would need to demonstrate a reasonable likelihood that he possesses a well-founded fear of persecution, which requires: (1) past persecution; (2) that was due to membership in a particular social group; and (3) the person is unable or unwilling to return or avail himself of the protection of his native country. 8 U.S.C. § 1158(b). As stated previously, in evaluating Tilija's well-founded fear of persecution, the IJ determined that Tilija did not establish past persecution, nor that he demonstrated an inability to avail himself of the protections of the state. Here, Tilija provides objective evidence in the form of multiple letters and medical reports from Nepal regarding his wife's attack. All letters attest to the fact that his wife was assaulted and raped, and the medical records support treatment consistent with such an attack. Both Mrs. Tilija and her friend reported that the police were notified of the attack and did not act.

The government emphasized that the only issue was whether Tilija could avail himself of the protection of his native country. Tilija need only provide enough evidence of this inability to rely on police protection to show he has a realistic chance to establish that his asylum claim should be granted at a later date. Mrs. Tilija's letters, taken as true, evince police indifference to her politically-motivated attack.

If Mrs. Tilija did tell the police on the same day and they did nothing, then it is unlikely that should Tilija himself return to Nepal, he would be able to avail himself of the country's protection from political persecution. The fact that Tilija's

11

wife was attacked, and not Tilija, does not cut against his asylum claim because she was attacked due to his political beliefs. In *Shardar*, we held that an affidavit from Shardar's brother in Bangladesh that the brother had been recently threatened with a gun by a rival party to Shardar's political party showed "a significant likelihood that Shardar would be subjected to particularized persecution" should he return to Bangladesh. 503 F.3d at 317.

We also held that medical records that confirmed his wounds were consistent with a beating supported the brother's affidavit. *Id.* Just as the individuals who attacked Shardar's brother inquired about Shardar, Mrs. Tilija's attackers inquired about Tilija's whereabouts and threatened him prior to attacking her, which is consistent with their prior inquiries regarding her husband's whereabouts. Additionally, third-party medical records corroborate the nature of her attack. Past persecution of family members due to the asylum seeker's social groups qualify to establish persecution for the asylum seeker's claim. *Id.* Therefore, Mrs. Tilija's inability to avail herself of the protection of her country against political enemies of her husband, in connection with her attack that rises to the level of past persecution, satisfies the reasonable likelihood standard that Tilija possesses a well-founded fear of persecution.

D. *Tilija Meets All Three Prongs to Grant His Motion to Remand*

Since Tilija makes out a prima facie claim for relief, the BIA erred in denying his motion to remand. The BIA may deny a motion to remand asylum proceedings if it determines that (1) the movant has not established a prima facie case for the relief sought, (2) the movant has not introduced previously

unavailable, material evidence, or (3) in the case of discretionary relief, such as asylum, the movant would not be entitled to relief even if the motion was granted. 8 C.F.R. § 1003.2(c)(1). As outlined above, Tilija's evidence shows a realistic chance that he can, at a later time, establish that asylum should be granted.

In addition to failing to establish a prima facie case, the BIA may deny a motion to reopen (and thus remand) immigration proceedings if the movant has failed to introduce previously unavailable, material evidence that justifies reopening. 8 C.F.R. § 1003.2(c)(1). Here, the government does not contend that Tilija's evidence that his wife was attacked, raped, and reported the incident to police officers who did not help her, is not new, material evidence. Instead, the government argues that the evidence was insufficiently detailed to establish prima facie eligibility for asylum relief. As the wife's attack occurred after the IJ's asylum determination, it was impossible to provide this information prior to the determination. This is not an avenue by which the BIA can deny Tilija's motion to remand.

Lastly, in cases in which the ultimate grant of relief is discretionary (e.g., asylum), the BIA can "leap ahead . . . over the two threshold concerns (prima facie case and new evidence) and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *INS v. Abudu*, 485 U.S. 94, 105 (1988); *Sevoian*, 290 F.3d at 170. Here, finding that Tilija meets his prima facie and new evidence threshold would require that the BIA remand his case. Again, the government does not make the argument that he would not be entitled to discretionary relief assuming he meets the first two thresholds. This is also not an avenue by which the BIA can deny Tilija's motion to remand.

13

*E.     As a Matter of Law, Tilija Establishes a Prima Facie Claim*

Our Court may also as a matter of law conclude that the evidence submitted by Tilija in support of his motion to remand constitutes prima facie evidence. *See Guo*, 386 F.3d at 564. In *Guo*, we determined that not only did the BIA apply the incorrect standard to Guo's evidence, it did so to the detriment of finding Guo had established her prima facie claim. *Id.* Therefore, as a matter of law, we held that she provided enough evidence to make a prima facie showing. *Id.* (noting "while we cannot yet say that Guo is entitled to asylum, we are persuaded that she at least deserves a hearing"). The facts here closely mirror the facts in *Guo*, and the BIA similarly applied the incorrect standard to evidence that should have been considered sufficient for a prima facie claim, thus we reach the same conclusion. As a matter of law, we find that Tilija has provided enough evidence to put forth a prima facie claim.

## IV.     Conclusion

The Board's rejection of Tilija's motion to remand was improper. The BIA applied the wrong standard in evaluating his motion to remand, failing to take his new evidence as true. Additionally, Tilija successfully made a prima facie claim under the correct standard: he presented evidence demonstrating a reasonable likelihood that he would prevail on the merits. We will thus grant Tilija's petition for review, hold that he establishes a prima facie claim, and remand for further proceedings consistent with this opinion.