**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3843

_____

JEAN CLAUDE WRIGHT,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No: A074-189-024)
Immigration Judge: Leo A. Finston

_____

Argued May 26, 2021

_____

Before: GREENAWAY, JR., SHWARTZ, *Circuit Judges*, and ROBRENO,
*District Judge**

(Opinion Filed: October 5, 2021)

Mary E. Levy
Neilay Shah [ARGUED]
Lauren Doig
Sarah Kim
Araesia King
Temple University
Beasley School of Law

_____

* The Honorable Eduardo C. Robreno, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

1719 North Broad Street
Philadelphia, PA 19122

Jules Epstein
Kairys Rudovsky Messing Feinberg & Lin
718 Arch Street
Suite 501 South
Philadelphia, PA 19106

Jessica Rickabaugh
Tucker Law Group
Ten Penn Center
1801 Market Street
Suite 2500
Philadelphia, PA 19103
        *Attorneys for Petitioner*


Merrick Garland, Attorney General
Kevin J. Conway [ARGUED]
Sharon M. Clay
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Attorneys for Respondent*

————————————

OPINION**

————————————

GREENAWAY, JR., *Circuit Judge*.

Petitioner Jean Claude Wright petitions for review of an order of the Board of

Immigration Appeals ("BIA") denying (1) his motion for remand in order to present new

---

** This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

evidence to the Immigration Judge ("IJ") and (2) his application for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Wright contends that the BIA applied the wrong legal standard to his motion to remand. We agree.

The BIA failed to address an apparent discrepancy between new evidence Wright sought to submit and certain statements in the brief Wright submitted to the BIA. Thus, we will remand to the BIA with instructions to remand to the IJ for further proceedings.

## I.      Background

In 1990, Yasin Abu Bakr, leader of Jamaat al Muslimeen ("JAM"), launched a coup in Trinidad and seized the parliament. Abu Bakr and his followers also attacked schools. Wright, who was eight-years old at the time, witnessed people being trampled and shot, and a school near his home was attacked. Wright's father, Sinclear Moore, was a member of the Trinidadian Army and the task force that captured Abu Bakr.

Moore resigned from the Trinidadian Army after Abu Bakr and several of his supporters were granted clemency and released from prison. In 1992, Moore moved to the United States. Two years later, fearing for Wright's life, his mother sent him to the United States to live with Moore. Wright entered the United States at the age of 12 on a B-2 Visa and was eventually given a green card.

Wright served in the United States Air Force from 2002 through 2008, when he was honorably discharged. Six months after his discharge, Wright was arrested for an incident involving a handgun. A jury convicted Wright and he was sentenced to eleven years in prison on two counts of first-degree armed robbery.

3

On February 26, 2018, U.S. Immigration and Customs Enforcement initiated removal proceedings against Wright, charging him as removable under § 237(a)(2)(C) and § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). Wright conceded that he was removable because (1) he is an alien convicted of a crime involving the use of a firearm and (2) he is an alien convicted of an aggravated felony which is a theft offense, and he was sentenced to a term of imprisonment greater than one year. Wright applied for (1) asylum, (2) withholding of removal under § 241(b)(3) of the INA, and (3) relief pursuant to the CAT.

The IJ denied each of Wright's claims for relief. The IJ concluded that Wright was statutorily ineligible for asylum because of his conviction for an aggravated felony. The IJ also concluded that Wright was ineligible for withholding of removal under the INA and the CAT because Wright's convictions were for particularly serious crimes. The convictions were "particularly serious" because Wright was sentenced to more than five years of imprisonment and he was presumptively barred from relief under the statute. Wright, nevertheless, remained eligible for deferral of removal under the CAT. *See* 8 C.F.R. § 1208.17(a).

The IJ found that Wright was credible but had not met his burden of proof on his CAT claim. Specifically, the IJ found that "there is no indication whatsoever that [Wright] will be identified . . . and targeted for mistreatment." AR 85. The IJ also found that the record did not contain any evidence establishing that "individuals like . . . Wright are sought out by Abu Bakr or other Islamists in Trinidad and tortured or killed." AR 85. Finally, the IJ found that members of Abu Bakr's opposition political party could not be

4

considered public officials or acting in an official capacity and that there was no evidence that the Trinidadian government would acquiesce, condone, or be willfully blind to any harm that would befall Wright.

Wright appealed the IJ's decision to the BIA and the BIA dismissed his appeal. Because Wright did not contest the IJ's dismissal of his asylum claim and withholding of removal under the INA and the CAT, the BIA found these issues waived. The BIA affirmed the IJ's denial of deferral of removal under the CAT.

Wright also requested that the BIA remand the matter to the IJ so he could present (1) a letter from Moore, (2) a letter from Ulric Charles, a former member of the Trinidad and Tobago Coast Guard, National Security Ministry, and (3) Charles's discharge certificate from the Coast Guard. The BIA denied Wright's request, which it construed as a motion to remand, for two reasons. *First*, the BIA found that Wright had not shown that the evidence he sought to include in the record was not previously available or "could not have been discovered or presented at the hearing before" the IJ. AR 05. The BIA also concluded that the evidence was not new because it was cumulative of Wright's previous "contentions and testimony." AR 05 (citing to the Hearing Tr. At 20–22 and Exhs. 5(A), 7)). *Second*, the BIA posited that even if Moore's statement were new evidence, Wright had "not met his heavy burden to establish that if this evidence is considered with the evidence of record the outcome of his case would likely change." AR 05 (citing to *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (B.I.A. 1992)).

Wright timely petitioned for review of the BIA's decision. The Government filed a motion to dismiss, arguing that we lacked jurisdiction to hear Wright's petition. Wright

5

filed a motion to proceed *in forma pauperis* and a motion to appoint counsel. Wright's

IFP motion and motion for counsel were granted.[1]

## II. Jurisdiction

Pursuant to 8 U.S.C. § 1252, we have jurisdiction over Wright's petition for

review of a final order of removal. When, as here, the alien is removable for having

committed an offense in violation of Sections 237(a)(2)(C) and 237(a)(2)(A)(iii) of the

INA, our jurisdiction over the final order of removal is limited to "constitutional claims

or questions of law" and does not include factual challenges. *See* 8 U.S.C.

§ 1252(a)(2)(C), (D); *Nasrallah v. Barr*, 140 S. Ct. 1683, 1694 (2020). "A CAT order[,

however] is distinct from a final order of removal" and the Court may "review . . . a

noncitizen's factual challenges to a CAT order." *Nasrallah*, 140 S. Ct. at 1694.[2]

Wright moved to remand pursuant to 8 C.F.R. § 1003.2(c)(2). While his petition

for review was pending, the Department of Justice ("DOJ") issued a final rule amending

the Executive Office of Immigration Review's ("EOIR") regulations regarding how the

BIA handles appeals. *See Appellate Procedures and Decisional Finality in Immigration

Proceedings; Administrative Closure*, 85 Fed. Reg. 81588-01 (Dec. 16, 2020) (the

"Rule"). As relevant here, the Rule "limits the scope of motions to remand that the BIA

---

[1] We thank Jules Epstein, Esq., Mary Levy, Esq., Neilay Shah, Lauren Doig, Sarah Kim, and Araesia King for their superb advocacy and assistance in this matter.

[2] In its motion to dismiss, the Government contends that we lack jurisdiction to consider Wright's petition for review because Wright did not raise a constitutional claim or question of law. The Government, however, concedes that Wright's merits brief moots the motion to dismiss. We will deny the Government's Motion.

6

may consider. . . . [such that] the BIA is prohibited from receiving new evidence on appeal, remanding a case for the immigration judge to consider new evidence in the course of adjudicating an appeal, or considering a motion to remand based on new evidence." *Id.* at 81589.

Wright explains that the Rule is "inoperative by the orders of two federal courts and will remain inoperative until both courts have entered final judgment on the Rule's legality." Pet'r's Ltr. 1. The Government states that the Rule is "currently stayed and is under review and, thus, it would be premature to consider the effect of the regulation at this time since the regulation may change or never be implemented." Resp't's Ltr. 1.

We agree with Wright and conclude that the Rule is currently inoperative. On March 10, 2021, the United States District Court for the Northern District of California enjoined the DOJ, the EOIR, the United States Attorney General, the Executive Director of the EOIR, and "all persons acting under their direction," from "[i]mplementing or enforcing" the Rule. *Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, No. 21-CV-00463-SI, 2021 WL 916804, at *44 (N.D. Cal. Mar. 10, 2021). The same court stayed the effectiveness of the Rule. *See id.* About a month later, the United States District Court for the District of Columbia also stayed the effectiveness of the Rule. *See Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.* No. 21-cv-00094-RJL, Dkt. No. 46 at 8 (D.D.C. Apr. 3, 2021). With the effectiveness of the Rule stayed by two District Courts, the prior versions of 8 C.F.R. §§ 1003.1, 1003.2 remain in effect and the Rule does not impact these proceedings.

### III. Discussion

Wright raises three issues for our consideration: (1) whether the BIA applied the wrong legal standard to his motion to remand, (2) whether the BIA failed to evaluate his CAT claim under the standard set forth in *Myrie v. Attorney General*, 855 F.3d 509 (3d Cir. 2017), and (3) whether the IJ erred by requiring corroboration but not notifying Wright that corroboration was required. Because we agree with Wright on the first issue and will remand for further proceedings, we do not address his other arguments.

#### A.  <u>**Wright's Motion to Remand**</u>

The BIA's denial of a motion to remand is reviewed for an abuse of discretion and the underlying findings of fact are reviewed for substantial evidence. *See Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006). The BIA abuses its discretion when its decision is "arbitrary, irrational, or contrary to law." *Id.*

Generally, the BIA may deny a motion to reopen in three circumstances: "(1) the alien has not established a prima facie case for the relief sought; (2) the alien has not introduced previously unavailable, material evidence; or (3) in the case of discretionary relief (such as asylum), the alien would not be entitled to relief even if the motion was granted." *Huang v. Att'y Gen.*, 620 F.3d 372, 389 (3d Cir. 2010) (quotation marks omitted) (quoting *Caushi v. Att'y Gen.*, 436 F.3d 220, 231 (3d Cir. 2006)). A motion to reopen and a motion to remand are subject to the same standards. *See id.* ("The BIA treats a motion to remand for the purpose of submitting additional evidence in the same manner as motions to reopen the record.")

Our analysis focuses on the first and second grounds for denial of a motion to remand, because deferral of removal under the CAT—the only form of relief Wright is eligible for and the relief at issue—is not discretionary. *See Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 64 (3d Cir. 2007), as amended (Mar. 6, 2007) ("If an alien produces sufficient evidence to satisfy th[eir] burden, withholding of removal or deferring of removal is mandatory."); 8 C.F.R. §1208.16 (c)(4) ("If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the [CAT]. Protection under the [CAT] will be granted either in the form of withholding of removal or in the form of deferral of removal.")

Wright argues that the BIA's denial of his motion to remand cannot stand because (1) the BIA imposed an inapplicable standard to his prima facie claim for relief, (2) under the correct standard he has made out a prima facie claim, and (3) the BIA's determination that his father's statement was previously available and duplicative was arbitrary. We address each argument in turn.

In *Guo v. Ashcroft*, we stated that the prima facie case standard "requires the applicant to produce objective evidence showing a 'reasonable likelihood' that he can establish that he is entitled to relief." 386 F.3d 556, 563 (3d Cir. 2004), as amended (Dec. 3, 2004) (alterations omitted) (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir. 2002)). "A 'reasonable likelihood' means merely showing a realistic chance that the petitioner can at a later time establish that [relief] should be granted." *Id.* at 564. We recently reiterated that this standard still governs. *See Tilija v. Att'y Gen.*, 930 F.3d 165, 171 (3d Cir. 2019).

Here, the BIA concluded that Wright had "not met his heavy burden to establish that if this evidence is considered with the evidence of record the outcome of his case would likely change." AR 05. The BIA cited to *Matter of Coelho*, 20 I. & N. 464, 471 (B.I.A. 1992) in support of this proposition.

The Government concedes that the "reasonable likelihood" standard articulated in *Guo* and *Tilija* is the applicable standard. The Government also concedes that by applying the "would likely change" standard set forth in *Coelho* the BIA applied a different standard. In light of those concessions, we conclude that the BIA abused its discretion by applying the incorrect legal standard when deciding whether Wright established a prima facie claim for deferral of removal.[3]

The Government concedes that when the substance of the statements in Moore's letter are taken as true, Moore's letter is sufficient to establish a prima facie case for deferral of removal under the CAT.[4] The BIA was required to accept the statements in

---

[3] We think it is worthwhile to briefly explain why the standard in *Coelho* contradicts our precedent. In *Coelho*, the BIA explained the "would likely change" standard as follows: "[s]tated another way, if we conclude that our decision on the appeal would be the same even if the proffered evidence were already part of the record on appeal, we will deny the motion to remand." 20 I. & N. Dec. at 473. The problem with this standard is that it requires the non-citizen to proffer new evidence that proves their claim for relief. As we explained in *Guo,* skipping to the "end-game" of proving the claim for relief is inconsistent with the "reasonable likelihood" standard that requires "merely showing a realistic chance that the petitioner can at a later time establish that [relief] should be granted." 386 F.3d at 564 ("The distinction may at first appear to be subtle shading, but without it '*prima facie*' (meaning at first sight) would lack meaning.").

[4] To qualify for deferral of removal under the CAT, Wright bears the burden of establishing that "it is more likely than not that he . . . would be tortured if removed to" Trinidad. 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such

10

Moore's letter as true. *See Shardar v. Att'y Gen.*, 503 F.3d 308, 313 (3d Cir. 2007) ("Facts presented in the motion to reopen are 'accepted as true unless inherently unbelievable.'") (quoting *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005)). The BIA, however, did not accept those facts as true, nor did it find that the facts were inherently unbelievable. Rather, the BIA questioned Moore's credibility and the veracity of his statements. The BIA abused its discretion by not accepting Wright's evidence as true because when the facts in the letter are taken as true, those facts establish a prima facie case for deferral of removal, as the Government conceded during oral argument. *See Tilija*, 930 F.3d at 172 ("We have held that not accepting evidence as true is an abuse of discretion if the petitioner would have established a prima facie case with the ignored evidence.").

In light of the Government's concessions, the only real point of dispute between the Government and Wright, as to the denial of his motion to remand, is whether the evidence was previously available.[5] The BIA found that Wright had not shown that the evidence was previously unavailable or "could not have been discovered or presented at

---

purposes as. . . punishing him or her for an act he or she or a third person has committed or is suspected of having committed, . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2020); *see also Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 977 (N.D. Cal. 2021) (enjoining the implementation, enforcement, and application of *Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review*, 85 Fed. Reg. 80274 (Dec. 11, 2020), which revised 8 C.F.R. § 1208.18(a)(1)).

[5] Given the Government's concession that Moore's letter would establish a prima facie claim for deferral of removal, the Government does not, and cannot, argue that Wright's evidence is not material.

11

the hearing before" the IJ. AR 05. The BIA added, in a footnote, that Wright's statement before the IJ about not being sure of his father's whereabouts did not address whether Wright or his family had attempted to obtain a statement from Moore prior to the hearing. The BIA also concluded that the evidence was not new because it was cumulative of Wright's previous "contentions and testimony." AR 05 (citing to the Hearing Tr. at 20–22 and Exhs. 5(A), 7).

The BIA's findings regarding the previous availability of Wright's evidence appear to be contradicted by the record. In response to the IJ's questioning about where his father was located, Wright testified that he was "not 100 percent sure" and that Moore might still be located in the United States. AR 122. Moore's letter, which is dated "8/1/10," states that after he "received the news that [Wright] was ordered deported by the Immigration Judge," Moore feared for Wright's life. AR 29–30. From these facts, a reasonable inference is that Wright was not in contact with Moore prior to his hearing before the IJ and thus the evidence was previously unavailable to Wright.

On the other hand, portions of the record may support a conclusion that Moore's letter was previously available. In his brief before the BIA, Wright claimed that "his attorney failed to present available material testimonies of witnesses pertaining to the explanation of the attack on [Wright's] life and an important letter from [Wright's] father (that explains in depth the horrible acts that occurred to the family)." AR 13. In support of his ineffective assistance of counsel claim, Wright stated that his attorney "failed to secure and present available material [evidence]," including the testimony of his "family members . . . [who] are ready and willing to come and testify," as well as "sensitive

12

documents, and the declaration that" Wright requested his counsel to present. AR 17. A few pages later, when requesting that the BIA remand the matter to the IJ for consideration of his "new evidence," Wright stated that "[t]he evidence was available but the ineffectiveness of counsel made it nearly impossible for this to be revealed." AR 24. Given that the "new evidence" Wright presented in support of his motion to remand included Moore's letter, this language appears to be an admission that Moore's letter was previously available.

Wright requests that we consider these statements as "misstatement[s]" or "an incorrect characterization," look past them, and find that Moore's letter was previously unavailable based on Moore's statement regarding when he learned of the IJ's deportation order. Oral Argument at 4:50–8:00. We decline to do so because Moore's statement regarding when he learned of Wright's order of deportation does not address whether Wright could have secured Moore's letter at an earlier date.

The BIA did not address Wright's statements regarding the availability of his new, material evidence. We cannot deny Wright's petition on the basis of his statements regarding the availability of the evidence because the BIA did not address the issue. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 539 (3d Cir. 2014); *Li v. Att'y Gen.*, 400 F.3d 157, 163 (3d Cir. 2005) (noting that a court cannot affirm an agency decision on a ground upon which the agency did not rely). We will remand to the BIA with instructions to remand to the IJ for further proceedings and resolution of the factual issues surrounding the availability of Moore's letter.

13

**IV.    Conclusion**

The BIA abused its discretion by applying the wrong legal standard to Wright's motion to remand and not accepting Wright's evidence as true.  When Moore's letter is taken as true, Wright has established a prima facie claim for deferral of removal under the CAT.  The BIA did not address certain factual issues regarding whether Wright's new evidence was previously available.  Accordingly, we will grant Wright's petition and remand to the BIA with instructions to remand to the IJ.