**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-1092

———————

GARTOR KIKI BROWN,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-007-050)
Immigration Judge: Kuyomars Golparvar

———————

Submitted under Third Circuit L.A.R. 34.1(a)
on June 27, 2025

Before: MONTGOMERY-REEVES, ROTH, AMBRO, *Circuit Judges*

(Opinion filed: August 14, 2025)

_____

OPINION[*]

_____

AMBRO, *Circuit Judge*

An Immigration Judge (IJ) ordered Gartor Kiki Brown, of Liberia, removed in 2013. The Department of Homeland Security (DHS) later released her from its custody because it could not carry out her removal. Brown, however, never appealed that 2013 removal order. Nearly ten years later, DHS redetained her and began removal proceedings after she committed another crime. Brown moved to reopen her initial removal proceeding twice, once before a new IJ and again before the Board of Immigration Appeals (BIA), arguing that she was entitled to asylum and withholding of removal. She also moved the BIA to reopen her case sua sponte and to remand her case on the ground that she had been incompetent in 2013. The BIA did not abuse its discretion in denying any of those motions, and we lack jurisdiction to review the BIA's decision denying Brown's request to reopen sua sponte, so we will dismiss her petition in part and deny it in part.

## I.    BACKGROUND

### A.    An IJ Ordered Brown Removed in 2013.

Brown arrived in the United States in September 1998 as a temporary visitor for pleasure. In March 2006, she became a lawful permanent resident under 8 U.S.C. § 1225.

_____

[*]  This disposition is not an opinion of the full Court and under I.O.P. 5.7 is not binding precedent.

Nearly two years later, Brown was convicted of theft in Minnesota, and five years after that, of criminal trespass in Pennsylvania.

After Brown's second conviction, DHS brought removal proceedings against her. In its Notice to Appear (NTA), DHS charged her with removability for having been convicted of two crimes involving moral turpitude in violation of 8 U.S.C. § 1227(a)(2)(A)(ii), and having been convicted of an aggravated felony, *id.* § 1227(a)(2)(A)(iii). DHS issued three hearing notices to Brown, and she attended each hearing in person.

The IJ overseeing those hearings determined that Brown was removable and ordered her removed from the country. She did not appeal that decision, and the order became final. *See* 8 U.S.C. § 1101(a)(47)(B)(ii). DHS nonetheless released Brown because it could not carry out her removal to Liberia.

## B.    Brown Moved to Reopen for the First Time and an IJ Denied Her Motion.

Because Brown continued to commit criminal offenses, DHS reinstated her removal and redetained her in 2021. In January 2023, she moved to reopen her removal proceedings so she could apply for asylum, withholding of removal, and protection under the Convention Against Torture. She argued that she would fear for her life if she returned to Liberia because she is a transgender woman, the daughter of a Liberian telecommunications bureaucrat who fell out of favor with the government in 2018, and part of a disfavored ethnic minority.

The IJ denied Brown's motion to reopen as untimely. Although there is a timeliness exception for asylum claims, the movant must show a change in country conditions that

materially affects her asylum claim. 8 C.F.R. § 1003.23(b)(4)(i). The IJ found that Brown had failed to provide that evidence.

## C. Brown Appealed the IJ's Order and Moved the BIA to Remand, Reconsider, and Reopen Again.

After the IJ denied her motion to reopen, Brown filed a pro se appeal with the BIA. She then retained counsel, who filed a brief in support of the appeal, along with an independent second motion to reopen. She also moved the BIA to reconsider the IJ's order on the grounds that (1) her NTA was defective and (2) she was not removable as charged because an intervening Supreme Court case held that the federal criminal code's definition of "crime of violence" was impermissibly vague. On top of her motions to reopen and reconsider, Brown sought to remand her case so an IJ could determine in the first instance whether she was mentally competent. And finally, Brown asked the BIA to reopen her case sua sponte.

## D. The BIA Affirmed the IJ's Denial of Brown's First Motion to Reopen and Denied Her Other Motions.

The BIA dismissed Brown's appeal, affirmed the IJ's denial of her first motion to reopen, denied her second motion to reopen, denied her motion to reconsider, denied her motion to remand, and vacated the order staying her removal. According to the BIA, the first motion to reopen was untimely and the IJ correctly found that Brown had failed to demonstrate changed country conditions. The BIA also denied Brown's second motion to reopen as time- and number-barred for the same reasons. The BIA next declined to consider Brown's argument that she was not removable as charged on the ground that her Pennsylvania criminal-trespass conviction was not a crime of violence after *Sessions v. Dimaya*,

584 U.S. 148 (2018). According to the BIA, that argument was time-barred and not subject to equitable tolling because Brown did not diligently pursue it.

The BIA also denied Brown's motion to remand. She requested remand for an IJ to conduct a mental competency hearing in the first instance as required by *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011). The BIA observed that Brown pointed to no record evidence suggesting that she was incompetent.

Finally, the BIA declined to reopen proceedings sua sponte because Brown's claim did not present an "exceptional situation" that warranted its "extraordinary intervention." AR 7.[1] She timely petitioned us for review.

## II.  JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. §§ 1003.2, 1003.1(b)(2). We have jurisdiction under 8 U.S.C. § 1252. We ordinarily lack jurisdiction when, as here, a petitioner challenges a final removal order on account of a covered criminal offense. 8 U.S.C. § 1252(a)(2)(C). We retain jurisdiction, however, over petitions that raise constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D). We also ordinarily lack jurisdiction to review the BIA's refusal to reopen proceedings sua sponte. *See Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474–75 (3d Cir. 2003). But there are exceptions when the BIA relied on an "incorrect legal premise" or violated a "settled course of adjudication." *Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017).

---

[1]  "AR" refers to the administrative record, which is found at Dkt. No. 10.

We generally review the BIA's orders denying a motion to reopen for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992). But we give fresh review to its "determination of an underlying procedural due process claim," *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153 (3d Cir. 2007), and whether the BIA properly applied "the equitable tolling standard 'to undisputed or established facts,'" *Nkomo v. Att'y Gen.*, 986 F.3d 268, 272 (3d Cir. 2021) (citation omitted). Finally, we review the BIA's underlying factual findings for substantial evidence. *Tilija v. Att'y Gen.*, 930 F.3d 165, 170 (3d Cir. 2019).

## III. ANALYSIS

### A. The BIA Did Not Abuse Its Discretion in Affirming the IJ's Denial of Brown's First Motion to Reopen.

A motion to reopen ordinarily must be filed within 90 days of the date of the final removal order that the noncitizen seeks to revisit. 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. §§ 1003.2(c)(2), 1003.23. There is an exception, however, when a noncitizen files "an application for asylum or withholding of removal" that is "based on changed country circumstances" and "supported by material evidence unavailable at the previous hearing." *Darby v. Att'y Gen.*, 1 F.4th 151, 160 (3d Cir. 2021) (citing *Bamaca-Cifuentes v. Att'y Gen.*, 870 F.3d 108, 111 (3d Cir. 2017)). The deadline can also be equitably tolled when a noncitizen "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Nkomo*, 986 F.3d at 272–73 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Brown's first motion failed to trigger the timeliness exception for asylum and withholding-of-removal claims because she included neither an application for that form of

relief nor evidence of changed country conditions. *See* 8 C.F.R. § 1003.23(b)(3). She did attach the United States Department of State Human Rights Reports for Liberia for 2017 and 2019. But she did not provide evidence of conditions in 2012 and 2013, without which the IJ could not conduct a comparative analysis.

Equitable tolling did not apply to Brown's claims either because she was not diligent in moving to protect her rights. *See Munchinski v. Wilson*, 694 F.3d 308, 331 (3d Cir. 2012). She could have moved to reopen based on her change in gender identity or her father's role in Liberian politics once those facts became available. Instead, Brown waited until she was ordered removed. That was not diligent. The BIA thus acted within its discretion in affirming the IJ's order denying her first motion to reopen.

**B.      The BIA Did Not Abuse Its Discretion in Denying Brown's Second Motion to Reopen.**

Brown's second motion to reopen raised the same asylum and withholding-of-removal claims. But she also argued that the BIA abused its discretion in denying her motion because the NTA that triggered her initial removal proceeding lacked certain information and because she was not removable as charged. Again, the order she is challenging is from 2013, so it is time-barred unless an exception applies or her claims were equitably tolled. Both arguments fail.

### 1. Brown's withholding-of-removal claims are time-barred.

Brown renewed her asylum and withholding-of-removal claims before the BIA, but with more detail. They still fail for the same reasons.[2]

**Gender identity.** Brown still produced no evidence about the treatment of transgender women in Liberia in 2013 against which the BIA could compare the country's current conditions. That she now identifies as a woman does not trigger the timeliness exception unless she can also identify a change in country conditions with respect to transgender rights. *Liu v. Att'y Gen.*, 555 F.3d 145, 151 (3d Cir. 2009).

**Mandingo ethnicity.** The BIA acted within its discretion in finding that Brown failed to submit evidence that conditions for those of Mandingo ethnicity have worsened since 2013. Indeed, the evidence of country conditions that Brown *did* submit indicates that Mandingos have been "discriminated against for years." AR 6; *see also Bamaca-Cifuentes*, 870 F.3d at 113 (BIA did not abuse its discretion in finding no changed country conditions when problems identified in application were "ongoing").

**Liberian politics.** The BIA also acted within its discretion in finding that Brown failed to establish that country conditions have changed because of her father's role as Liberia's telecommunications regulator. She produced evidence that her father was fired because he changed his views on a tax proposal, but none showing that he suffered political retribution or that she should expect to either.

---

[2] Brown argues for the first time before us that she would suffer persecution in Liberia because she is disabled. But she never exhausted this argument before the agency, so we cannot consider it. *See* 8 U.S.C. § 1252(d)(1).

## 2. Equitable tolling does not apply to Brown's claims.

The BIA was within its discretion in holding that equitable tolling did not apply to Brown's renewed asylum claim in her second motion to reopen for the same reason it did not apply to her asylum claim in her first motion: she was not diligent in moving to protect her rights. *See supra* at 6–7.

Brown's argument that equitable tolling paused the clock on her claim that she is not removable as charged also fails. Recall that she was ordered removed under 8 U.S.C. § 1227(a)(2)(A)(iii) because she was convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(F), which includes crimes of violence as defined in 18 U.S.C. § 16. Brown now argues that the Supreme Court's decision in *Dimaya*, which held that § 16(b) is unconstitutionally vague in the immigration context, retroactively applies to her. The record shows that Brown made no effort between 2013 and when DHS redetained her to hire a lawyer or otherwise pursue her rights. To be diligent, she must at least try to do so. *See Alzaarir v. Att'y Gen.*, 639 F.3d 86, 90 (3d Cir. 2011). Here, she did nothing. That was not diligent either.

## 3. The purported deficiencies in Brown's NTA do not justify reopening.

Brown also argues that the NTA she received on September 17, 2013 was deficient because it did not contain the date of her hearing. *See* 8 U.S.C. § 1229(a)(1); *Niz-Chavez v. Garland*, 593 U.S. 155, 170 (2021). Section 1229 is "akin to a claims-processing rule." *Chavez-Chilel v. Att'y Gen.*, 20 F.4th 138, 143 (3d Cir. 2021). The Supreme Court has held that "[n]o reasonable construction of [claim]-processing rules … would allow a litigant" to prevail when she objects to the claim-processing violation only "after [she] has litigated

9

and lost the case on the merits." *Kontrick v. Ryan*, 540 U.S. 443, 460 (2004). Yet that is what happened here. Brown never raised these procedural objections during her initial removal hearings, so she cannot litigate them now.

**C.      The BIA Did Not Abuse Its Discretion in Denying Brown's Motion to Remand.**

Brown moved the BIA to remand her case to an IJ for a mental competency hearing. Noncitizens in removal proceedings are presumed competent. *M-A-M-*, 25 I. & N. Dec. at 477. Absent "indicia of mental incompetency," an IJ need not review a noncitizen's competency. *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 486 (3d Cir. 2022).

The BIA here did not abuse its discretion in denying Brown's motion to remand because there were no indicia of incompetency in the record. Brown submitted evidence that in 2023 she experienced "Post-Traumatic Stress Disorder," "Transsexualism," and "Unspecified Gender Dysphoria," and that she was at risk for suicide. AR 70–77. But she provided no evidence about her mental health in 2012 or 2013, which is when she argues the IJ should have considered her competency. *See M-A-M-*, 25 I. & N. Dec. at 480 ("[M]ental competency is not a static condition … [and] can vary over time.").

**D.      We Lack Jurisdiction to Review the BIA's Decision Not to Reopen Brown's Case Sua Sponte.**

Brown next argues that the BIA abused its discretion by declining to reopen her case sua sponte. The BIA denied her motion because it found that she had failed to show an "exceptional situation[]" warranting reopening. AR 7. "If the reasoning given for a decision not to reopen sua sponte reflects an error of law, we have the power and responsibility to point out the problem, even though ultimately it is up to the [Board] to decide whether it

will exercise its discretion to reopen." *Pllumi v. Att'y Gen.*, 642 F.3d 155, 160 (3d Cir. 2011) (italicization omitted). Although Brown invokes this exception, she does not identify the allegedly incorrect legal premise, so this argument fails.

"[I]f an agency announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, that exercise may be reviewed for abuse" too. *Sang Goo Park*, 846 F.3d at 651 (quoting *Calle-Vujiles v. Ashcroft*, 320 F.3d 472 (3d Cir. 2003)). Brown argues that the BIA has "limited its own discretion through its 'settled course' of reopening cases sua sponte based on *Sessions v. Dimaya*." Pet. Br. 59–60 (italicization omitted). But she cites no authority for that proposition, so this argument also fails as well.

### E.     Brown's Due-Process Arguments Are Unexhausted.

Finally, Brown raises a bevy of due-process arguments for the first time in her petition for review. She claims that the IJ in her 2013 hearing violated her due-process rights by "abrogat[ing] his responsibility to ensure that [she] fully understood the removal proceedings," failing to "advise [her] of her eligibility for relief from removal," finding her removable, and failing to quash her NTA. Pet. Br. 25. But these first-time arguments are unexhausted and we cannot review them. *See* 8 U.S.C. § 1252(b)(4)(A); *id.* § 1252(d).

Brown also claims that the second IJ violated her due-process rights by denying her first motion using a form order without "address[ing] the substance of [her] motion in any way." Pet. Br. 26. But an IJ's decision to grant or deny a motion to reopen is discretionary. *Darby*, 1 F.4th at 165. Because noncitizens "do not have a liberty or property interest in

11

discretionary relief," Brown does not have a cognizable due-process interest in reopening. *Id.*

Brown's last due-process argument is that the BIA should have itself produced the transcript from her 2012–13 removal hearing so that it could evaluate her motion to remand. She cites no authority, however, for her claim that it is the BIA's responsibility to produce transcripts when a remand movant advances an incompetency claim for the first time in a motion to reopen nearly ten years later. This argument fails too fails.

\* \* \*

The BIA did not abuse its discretion in holding that Brown's (1) asylum and withholding-of-removal claims were time-barred, (2) claim that she is unremovable as charged was time-barred, (3) due-process claims were either time-barred or unexhausted, (4) claim that her NTA was deficient and untimely, and (5) motion for remand was unwarranted. And we lack jurisdiction to review the BIA's decision not to reopen her removal proceedings sua sponte. We thus deny the petition in part and dismiss it in part.